**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Justo Fernan MARTINEZ et al.,
Defendants-Appellants.**

No. 72-3133.

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1973.

Jack V. Eskenazi, Federal Public Defender, court-appointed, T. Sakowitz, Asst. Federal Public Defender, Miami, Fla., for Martinez and Huila.

Max P. Engel, David B. Javits, Miami, Fla., for Soris.

Robert W. Rust, U. S. Atty., J. Daniel Ennis, Bruce E. Wagner, Asst. U. S. Attys., Miami, Fla. for plaintiff-appellee.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We review on this appeal the judgments of conviction and sentence following jury verdicts of guilty of Justo Fernan Martinez, Oswaldo Huila, and Lorenzo Padilla-Soris. The charges arose from the importation into the United States of approximately 28 pounds of marijuana. We vacate or reverse the convictions of all three appellants, and remand for further proceedings in the district court.

### The Facts

On August 16, 1972, agents of the United States Customs Service began surveillance of the normal docking berth on the Miami River of the M/V MONTEGO, which was due to arrive that evening from Turbo, Colombia. From vantage points approximately 100 yards away from the dock the agents observed the MONTEGO dock at approximately 9:00 P.M. that evening. The surveillance continued into the early morning hours of August 17th. Shortly after 1:00 A.M. the agents using binoculars observed someone leave the ship with a package under his arm. This person, identified later as the defendant-appellant Huila, walked alongside the ship toward the bow, where he placed the package on the wharf and returned to the ship. A short time later Huila came back and moved the package to a new location a few feet away and once more returned to the ship.

Two of the customs agents at this time moved to within a few yards of the position of the package and resumed their surveillance. About 25 minutes later the agents noticed the brakelights of an automobile near a warehouse immediately adjacent to the wharf. They saw a person who was identified later as the defendant-appellant Martinez, walk from the direction of the warehouse toward the place where Huila had last left the package. Martinez picked up the package and started back toward the parked automobile near the warehouse. The two customs agents watching from near the package then emerged and attempted to arrest Martinez, after identifying themselves by stating in English that they were United States Customs agents.

Martinez reacted by swinging the package in a wide arc in the direction of the agents. He either released the package or lost his grip on it and it sailed into the Miami River. Martinez was subdued after a short scuffle, whereupon one of the agents dove into the river and retrieved the package which Martinez had thrown.[1]

While these events were taking place, another customs agent approached the car in which Martinez had ridden to the vicinity of the warehouse. A third man, later identified as the defendant-appel-

---

1. The testimony was to the effect that the customs agent took four separate packages from the river, the implication being that the original package, possibly no more than a cardboard box, distintegrated in the water leaving the four individual packages retrieved by the agent from the water.

lant Padilla-Soris, had remained in the automobile behind the wheel. The customs agent attempted to identify himself in English to Padilla-Soris.[2] Padilla-Soris started the car at once and drove away. Still another agent, waiting in a government vehicle at the entrance to the dock area pursued Padilla. Speaking Spanish and using a loud speaker he identified himself as a customs agent. Padilla-Soris then stopped his vehicle at the side of the road and surrendered to the agent.

Martinez and Padilla-Soris were taken to customs headquarters for interrogation. At the same time the substance contained in the packages retrieved from the water was tested. It was determined that the substance was marijuana.

At the outset of the questioning, Martinez signed a waiver of his *Miranda* rights[3] and proceeded to give a statement to the customs officials. In the course of his statement Martinez furnished the name of the man who had off-loaded the marijuana from the MONTEGO as Huila.

For reasons not entirely clear from the testimony Huila was not arrested at the same time that Martinez and Padilla-Soris were taken into custody, but some time later was arrested and taken to customs headquarters for interrogation. Whether Huila was arrested before or after he had been identified by Martinez as the person depositing the

marijuana on the dock is not clear from the testimony.

The grand jury indicted Martinez, Huila, and Padilla-Soris charging: (i) Count I: conspiracy to import, (ii) Count II, actual importation of, and Count IV, possession with intent to distribute a Schedule I controlled substance, to wit the 28 pounds of marijuana.[4] Additionally Count III charged Huila with distribution of marijuana[5] and Count V charged Martinez with assaulting a federal officer.[6]

### The Trial

■ The trial occurred on September 21 and 22, 1972. Prior to the commencement of the trial, Martinez, through his attorney, tendered a plea of guilty to Count II of the indictment, which charged importation of the marijuana. The prosecution apparently had agreed in exchange to dismiss the remaining charges against Martinez. The trial judge, in compliance with Rule 11, F.R.Crim.P., questioned Martinez to determine whether his plea was knowingly and voluntarily entered. In the course of this inquiry, Martinez asserted that his waiver of his *Miranda* rights during post-arrest interrogation had been obtained in exchange for a promise by customs agents that "nothing would happen to [him]." This prompted the trial judge to refuse to accept Martinez' plea of guilty, on the apparent ground that the plea might not have been voluntarily entered.[7] Counsel for Martinez attempt-

2. It was later ascertained that Padilla spoke only Spanish.

3. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

4. In violation of: (i) Title 18 U.S.C. Sec. 371, (ii) Title 21 U.S.C. Sec. 952(a) and Title 18 U.S.C. Sec. 2, and (iii) Title 21 U.S.C. Sec. 841(a) and Title 18 U.S.C. Sec. 2.

5. In violation of Title 21 U.S.C. Sec. 841 (a)(1).

6. In violation of Title 18 U.S.C. Sec. 111.

7. In discussing his refusal to accept the guilty plea the trial judge stated:
    "I could not, based on what Martinez has told me make a finding which I have to

find that he freely and voluntarily, without the waiver of any constitutional rights, pled guilty. That is a finding I have to make and I can't do it on the basis of what he has told me."

Counsel for Martinez correctly points out to us that this is not a precise statement of the requirements under Rule 11, F.R.Crim.P., for acceptance of a guilty plea. The entry of a plea of guilty does indeed waive a number of constitutional rights, among them the right to trial by jury and the right to confront one's accusers in open court. McCarthy v. United States, 1969, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425. Examination of the entire colloquy between Martinez' counsel and the judge indicates, how-

ed to persuade the district judge that, independently of the coerced statement, the government possessed sufficient evidence upon which to convict him. Further, Martinez had admitted his guilt of the charge of importation. The judge however, persisted in refusing to accept Martinez' plea under the circumstances.

In view of this ruling, counsel for Padilla-Soris at this juncture renewed his motion for severance, earlier denied with other pre-trial motions. He was anxious to have Martinez available to testify for Padilla-Soris, supporting his defense as Martinez had offered to do earlier. The availability of this testimony for Padilla-Soris depended upon Martinez' pleading guilty and not being on trial when called to the stand. It appeared certain that Martinez would refuse to take the stand at a joint trial with Padilla-Soris and Huila. The court once more denied the motion for severance.

Martinez' counsel, a member of the Public Defender's staff, was court-appointed for both Martinez and Huila. He now moved for severance as to Huila, protesting that failure to accept Martinez' tendered guilty plea would prejudice either Huila's or Martinez' rights to a fair trial if his clients were tried jointly.[8] The court denied this motion and the trial proceeded against all three defendants.

As the government approached the close of its case, it became apparent that Martinez was given an incomplete and unacceptable statement of his Miranda rights by the Spanish speaking agent who interrogated him after arrest. It developed that this customs agent had told Martinez that the trial judge would be informed as to whether he waived his right to counsel at the interrogation. This left an obvious implication that his failure to waive right to counsel would be construed as unwillingness to cooperate to his detriment at trial. It was also shown that Martinez was told that the charge against him was smuggling marijuana, without mention of a possible charge of assaulting a federal officer. On the basis of these disclosures the trial judge ruled that the statement was inadmissible as coerced.

With the resolution of the problem of the coerced statement, Martinez' counsel once more tendered Martinez' plea of guilty to Count II of the indictment. The judge at this point appeared more favorably disposed toward acceptance of the plea and questioned the government as to its position. Government counsel stated that the offer to drop all charges against Martinez other than Count II in exchange for a plea of guilty to that count was rescinded, since the government had by then undertaken the burden of proving all of the counts. With the matter of the guilty plea thus disposed of, the court-appointed counsel for Martinez and Huila again moved that Huila's trial be severed so Martinez' exculpatory testimony could be available to Huila. Again the severance motion was denied and the government rested its case in chief.

---

ever, that the judge was fully aware of the requirements for acceptance of Martinez' guilty plea and some of the problems posed by the existence of a possibly coerced statement. Later in the colloquy he stated:

"That [the possibly coerced statement] would be a fine ground for a [collateral attack on the judgment under 28 U.S.C. Sec.] 2255 where he would say, 'Because of that confession I went ahead and admitted I was guilty, because they could introduce it against me, and I was induced, by virtue of a confession which was wrongfully extracted from me.' "

8. Counsel asserted that as Huila's attorney he would expect to call Martinez as a witness for Huila. But Martinez' interests would best be served by staying off the witness stand. While the joint counsel for Martinez and Huila did not move for a severance in specific terms, we so treat it and think the trial judge should have done likewise on the basis of the language employed: "I feel that for the two of them to go to trial together, I would be in a possible position of conflict." As an alternative, the attorney urged the court to appoint another counsel to represent one of the two defendants. This latter request was denied by the court.

At this time, the court granted counsel's motion on behalf of Padilla-Soris for judgment of acquittal as to Counts II and IV of the indictment. The court refused, however, to direct acquittal of Padilla of the conspiracy charge. The trial then proceeded with the presentation of evidence by the defendants.

The case was submitted to the jury and all defendants were found guilty as charged of the counts remaining for trial. Judgments of conviction and sentence ensued, followed by appeals by each defendant, asserting various grounds of error in the trial below, which we now consider.

### Acceptance of Martinez' Guilty Plea

■■ Martinez raises a single point by his appeal: that error was committed by the trial judge when he refused to accept his tendered plea of guilty to Count II of the indictment against him. Consideration of this question must start with the well-established proposition that a "criminal defendant has [no] absolute right to have his guilty plea accepted by the court." Lynch v. Overholser, 1962, 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211, 220. For example, a federal judge must refuse to accept a guilty plea where the requirements of Rule 11, F.R.Crim.P., cannot be met.[9] It was for the very reason that the trial judge felt that the voluntariness standard of Rule 11 was not met that he refused to accept Martinez' plea. But by a brief hearing outside the presence of the jury, the trial judge could have removed the barriers in the way of his finding that Martinez' plea was voluntarily entered. Instead those barriers remained until the government had all but finished its presentation, and their eventual removal came too late for Martinez to enter his plea to Count II.

■ The decision to accept or reject a tendered guilty plea, once the requirements of Rule 11 have been satisfied, is committed to the "sound judicial discretion" of the trial judge, Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 433. But the First Circuit requires that a trial judge "must seriously consider accepting a tendered plea [of guilty] . . . ." United States v. Bednarski, 1 Cir. 1971, 445 F.2d 364, 366. The District of Columbia Circuit goes a step further, and holds that a trial judge should not refuse to accept a guilty plea without "good reason." McCoy v. United States, 1966, 124 U.S.App.D.C. 177, 363 F.2d 306, 307. Since we lack precedent within our own circuit, we will weigh our problem in the light of these standards. The question before us is whether, once the requirements of Rule 11 have been met, "good reason" for rejecting a guilty plea exists because of the possibility of later collateral attack on the judgment to be entered upon the plea.

■■ One of the purposes underlying Rule 11 is to enable a trial judge to determine whether a defendant's guilty plea is voluntary. McCarthy v. United States, 394 U.S. at 465, 89 S.Ct. at 1170, 22 L.Ed.2d at 424–425. A second function of Rule 11 is to expedite the disposition of post-conviction attacks upon judgments based on guilty pleas by providing a complete record of the basis upon which the plea was accepted. Id. But the rule is not designed to discourage the acceptance of guilty pleas merely because the trial judge is uneasy or apprehensive over possibility of a subsequent collateral attack. Indeed, Rule 11 recognizes the possibility of such attacks and as just pointed out is designed to facilitate their disposition by requiring the trial judge to make a complete

---

9. Rule 11 requires as a prerequisite to acceptance of a guilty plea that the trial judge "first address . . . the defendant personally and determine . . . that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." A further requirement for entering judgment based on a plea of guilty is that the trial judge determine to his satisfaction "that there is a factual basis for the plea." See McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418.

record showing the knowing and voluntary nature of the plea and the factual basis for it.

The question of voluntariness under Rule 11 depends also upon inquiries to determine whether the plea is knowingly entered and whether there exists a factual basis for the plea. For example, it is not erroneous for a trial judge to find that a plea is knowingly and voluntarily entered even in the face of a defendant's unwillingness or inability to admit guilt, where compelling reasons are present for the entering of a guilty plea, as long as there exists substantial evidence of the defendant's guilt.[10] At all events, the question whether a guilty plea is voluntarily entered is determined, not by whether there are external forces inducing a defendant to plead guilty—for such forces will invariably exist—but instead by a determination as to whether these forces are constitutionally acceptable. So long as the trial judge is convinced by the record before him that a guilty plea is not coerced, a further showing that the plea is knowingly entered and that there exists sufficient evidence of guilt will satisfy the requirements of Rule 11.

Against this background we view the action of the district court as contrary to both the spirit and the purpose of Rule 11. In the first place, it cannot be said that Martinez' guilty plea was involuntary in the sense of Rule 11. As we have indicated, Martinez freely admitted his guilt of the charges of im-

porting marijuana. Also as Martinez' attorney repeatedly urged, the government had ample evidence, independent of the coerced confession, to convict Martinez of the importation charge. It cannot be said in the circumstances present that the existence of a possibly coerced, post-arrest statement rendered Martinez' tendered guilty plea involuntary under Rule 11. We hold that the rejection of Martinez' plea was not for "good reason," and was reversible error. McCoy v. United States, supra.

We iterate that it would have been simple for the judge to remove the cloud resting, in his judgment, over the voluntariness issue. A short hearing out of the presence of the jury and before trial was underway would have demonstrated that Martinez' post-arrest statement was inadmissible, exactly as was later determined. With this determination made, the acceptance of the guilty plea, if persisted in, could have followed. This procedure would have constituted "serious consideration" of acceptance of the guilty plea. United States v. Bednarski, supra.

Since we find that Martinez' guilty plea should have been accepted we vacate the convictions as to him under the remaining counts, Counts I, IV and V, and remand for resentence under Count II only. The trial court should correct the record by setting aside the jury verdict as to Martinez and the judgment and sentences thereunder, followed by an adjudication of guilt under Count II upon

---

10. North Carolina v. Alford, 1970, 400 U.S. 25, 37-38, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 169. In McCarthy v. United States, supra, as already noted in the text, the Supreme Court held that guilty pleas were required under the Due Process clause of the Constitution to be knowing and voluntary. The Court in its discussion made it clear that the voluntariness requirement of F.R.Crim.P. 11, is constitutional in origin and nature. As such, there can be no doubt that the voluntariness requirement applies alike to state and federal prosecutions. Oaks v. Wainwright, 5 Cir. 1971, 445 F.2d 1062, 1063; Wade v. Wainwright, 5 Cir. 1969, 420 F.2d 898, 900; Busby v. Holman, 5 Cir. 1966, 356 F.2d 75,

78. Since the voluntariness standard is constitutional in nature and origin, it is patent that a plea, constitutional if tendered in state court proceedings, would not be ruled unconstitutional in federal criminal prosecutions. Otherwise stated, the requirements for voluntariness in federal proceedings cannot be less strict than federal habeas corpus standards applied to state prosecutions. We therefore have no hesitancy in citing, in the context of a federal prosecution, the rule for voluntariness laid down in the review of state court proceedings. North Carolina v. Alford, supra. Cf. Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

the basis of the tendered plea of guilty, and not by reason of the jury's verdict.

### Severance

The district judge's failure to accept Martinez' guilty plea raised problems for his co-defendant, Huila. Martinez had told his attorney, who also represented Huila, that he was willing to testify as a witness for Huila if the court accepted his guilty plea to Count II of the indictment. The government was agreeable at that time to that disposition of the charges against Martinez. When the court refused to accept Martinez' plea, motions for severance on behalf of Huila and Padilla-Soris were summarily denied by the court. Counsel for Huila now urges on appeal that the denial of severance as to him was an abuse of discretion by the trial court.

Under Rule 14 of the Federal Rules of Criminal Procedure, it is established that the granting of a motion for a severance is a matter within the discretion of the trial judge. Opper v. United States, 1954, 348 U.S. 84, 75 S. Ct. 158, 99 L.Ed. 101; Smith v. United States, 5 Cir. 1967, 385 F.2d 34, 37. When an appellant challenges the refusal of a trial judge to grant a motion to sever, he shoulders the burden of making a clear showing that "prejudice resulting in the denial of a fair trial" flowed from the failure to grant the motion. United States v. Nakaladski, 5 Cir. 1973, 481 F.2d 289; United States v. Iacovetti, 5 Cir. 1972, 466 F.2d 1147, 1153; Smith v. United States, supra.

The question then is whether depriving one defendant of the opportunity to use the exculpatory testimony of a co-defendant amounts to "prejudice resulting in the denial of a fair trial." Byrd v. Wainwright, 5 Cir. 1970, 428 F. 2d 1017, was a state habeas corpus case, governed by 14th Amendment Due Process considerations rather than by the corresponding relief from prejudicial joinder provisions of Rule 14, F.R.Crim. P. But the criteria are similar, and in Byrd this circuit was presented with the opportunity to consolidate and catalogue our prior rulings for the guidance of trial judges confronted with motions for severance based on a desire to offer exculpatory testimony of a co-defendant. Byrd set forth the following guidelines: (i) the movant should "show that the testimony would be exculpatory in effect"; we cautioned that such a showing would not require the equivalent of a statement under oath by the co-defendant whose testimony was sought, op. cit. at 1020; Smith v. United States, supra, at 38; (ii) the movant should show to the court's satisfaction that the co-defendant will in fact testify; in this respect we cautioned that "the inquiry is not as to certainty whether the co-defendant will or will not testify but the likelihood;" op. cit. at 1022; Smith, supra, at 38; and (iii) we indicated that the trial judge might properly consider the exculpatory nature and the significance of the desired testimony to the movant's defense, which "might be restated in terms of the extent of potential prejudice to the defendant if the defendant is tried without the opportunity to elicit the co-defendant's testimony," op. cit. at 1020; United States v. Echeles, 7 Cir. 1965, 352 F.2d 892, 897–898.

There appears to be little doubt that conditions (i) and (ii) above were satisfied in the present case. Counsel for Martinez and Huila made the following statement to the court as to Martinez' planned testimony when he renewed the severance motion during the trial at the close of the government's case in chief:

" . . . the defendant Martinez, if he were severed from this trial, would testify on behalf of the defendant Huila and exculpate him from any involvement in the matters which Huila is charged with. But, under the circumstances, he cannot take the stand because he is a defendant and will only inculpate himself."

The importance of Martinez' exculpatory testimony to Huila's defense is apparent. The crucial question as to Huila was whether he had knowledge, either of

the plan to import the marijuana, or that the package which he took from the M/V MONTEGO and placed on the dock actually contained marijuana. Martinez was the only individual other than Huila himself in a position directly to rebut the government's circumstantial evidence of Huila's knowledge of these facts.

The Court of Appeals for the Fourth Circuit has held in a similar situation that the failure to sever was reversible error. See United States v. Shuford, 4 Cir. 1971, 454 F.2d 772, where two defendants were charged with conspiring to knowingly submit and knowingly submitting false documents to the government, in violation of Title 18 U.S.C. Sec. 371 and Sec. 1001. The defendant Shuford, before the trial began and again after the prosecution rested, moved that his co-defendant Jordan's case be served so that he might have the benefit of Jordan's testimony, which was expected to contradict the government's evidence. In reversing the trial court's refusal to grant a severance in this situation, the Fourth Circuit said:

> "The reported decisions support the proposition that a severance is obligatory where one defendant's case rests heavily on the exculpatory testimony of his co-defendant, willing to give such testimony but for the fear that by taking the stand in the joint trial he would jeopardize his own defense." Id. at 776.

We think the conclusion reached by the Fourth Circuit was sound, and conclude that failure to grant the motion for severance resulted in prejudice to Huila's rights. Rule 14, F.R.Crim.P. Further, the severance sought in this case would not have been overly burdensome from the standpoint of judicial economy, as the result at most would have been two relatively short, uncomplicated trials. The judgment against Huila is vacated with directions that he be afforded another trial where he will have the opportunity to call Martinez as a witness in his behalf.

We find it unnecessary to discuss at length an additional ground for reversal raised by Huila. Briefly, he contends that error was committed by the trial judge in denying him the right to call the customs agents as witnesses to elicit testimony regarding the basis of their identification of him as (i) independently made or (ii) made as a fruit of the suppressed post-arrest statement of Martinez. Counsel for Huila should be afforded an opportunity to present evidence in this regard to the court prior to his retrial.

## Sufficiency of the Evidence as to Padilla-Soris

Appellant Padilla-Soris assigns as error the district court's refusal to grant him a judgment of acquittal on the conspiracy charge, Count I, at the close of the government's evidence. This was by then the only remaining charge against this defendant, the motion for judgment of acquittal being granted as to Counts II and IV. As this Court stated:

> "In considering the motion for judgment of acquittal, F.R.Crim.P. 29(a), the District Judge must consider the evidence in the light most favorable to the Government, McFarland v. United States, 5 Cir. 1960, 273 F.2d 417; United States v. Carter, 6 Cir. 1963, 311 F.2d 934, together with all inferences which may reasonably be drawn from the facts, Cartwright v. United States, 10 Cir. 1964, 335 F.2d 919. The determining inquiry is whether there is substantial evidence upon which a jury might reasonably base a finding that the accused is guilty beyond a reasonable doubt."

Blachly v. United States, 5 Cir. 1967, 380 F.2d 665, 675.

Our function on appeal is to consider the evidence in the light most favorable to the government, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, and to decide in circumstantial evidence cases, as here, "whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the ac-

**24**

cused's innocence." United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 825.

The critical issue as to Padilla-Soris' appeal is whether sufficient evidence was introduced to permit the jury to determine that Padilla-Soris had knowledge of the existence of a conspiracy. Knowledge of the existence of a conspiracy must usually appear from surrounding circumstances; it is seldom capable of direct proof. Proof of knowledge often rests upon "inferences drawn from relevant and competent circumstantial evidence . . . ." United States v. Warner, supra, at 830. Mere association, without more, however, does not suffice to demonstrate knowledge. Panci v. United States, 5 Cir. 1958, 256 F.2d 308, 312. These principles point the way to decision as we review the evidence produced by the government to show Padilla's participation in a conspiracy to import marijuana into the United States.

It was shown first that Padilla-Soris drove Martinez to the dock area on the evening that the package of marijuana, off-loaded by Huila from the M/V MONTEGO, was retrieved by Martinez from its position of rest on the dock. Padilla-Soris immediately left the dockside area when he was approached and hailed by a customs agent. But the agent spoke a language unintelligible to the appellant. When Padilla-Soris was accosted a few moments later by a Spanish speaking agent he stopped the car he was driving and surrendered.

We do not discount the possibility that Padilla in fact knew of existence of a conspiracy to import marijuana, and that he drove Martinez to the dockside area in the early morning hours of August 17th in an effort to advance the objects of that conspiracy. Padilla-Soris may have met Martinez on a prior occasion, either independently or through a common acquaintance. It is also possible that Padilla-Soris became a member of the conspiracy earlier on the evening of August 16th, before driving Martinez to the dockside where Martinez took pos-

session of the contraband. Any one of these possibilities may account for Padilla-Soris' knowledge of and participation in a conspiracy to import marijuana into the United States. But possibilities, however numerous, do not supply proof. The circumstances proved must be susceptible of inferences upon which a jury may reasonably find guilt beyond a reasonable doubt. The government was unable in this case to show that Padilla ever knew or met Martinez or Huila prior to the trip to the docks, or that he agreed with them or either of them to import marijuana into the United States. All we have is the evidence that Padilla drove Martinez to the docks, that he left the docks when approached by one customs agent, and that soon afterward he surrendered without resistance to another customs agent. No evidence of an incriminating nature was found on his person or in the car. Padilla-Soris' explanation of the trip to the dock was that he first met Martinez that evening at the home of a woman acquaintance, and that at her request he drove Martinez to the docks in her automobile. This was not disproved. Martinez when called as a witness by Padilla-Soris, presumably as a corroborating witness, refused to testify on grounds of self-incrimination.

When Padilla-Soris' participation in the conspiracy was allowed to go to the jury on the meager and insubstantial proof introduced in this case, it was an invitation to return a conviction based entirely on association. Mere association, standing alone, will not suffice to support a conviction for conspiracy. Panci v. United States, supra. The jury in this case was not presented with evidence from which reasonable minds could find guilt beyond a reasonable doubt. The question of Padilla-Soris' guilt should not have been submitted to the jury. Rather, his motion for judgment of acquittal should have been granted. His judgment of conviction and resultant confinement sentence under Count I of the indictment are reversed, with directions to dismiss the in-

dictment as to the defendant-appellant, Lorenzo A. Padilla-Soris.[11]

### Conclusion

As to the appeal of Martinez, his convictions under Counts I, IV and V are vacated and set aside; upon remand his guilty plea to Count II is directed to be accepted and sentence imposed thereunder. As to the appeal of Huila, his convictions under Counts I, II, III, and IV are reversed and remanded for a new trial. Padilla-Soris' conviction under Count I is reversed with directions to dismiss the indictment as to him.

Vacated and set aside in part and remanded with directions; reversed for new trial in part; and reversed with directions to dismiss in part.

---

11. In view of our setting aside Padilla-Soris' conviction because of the insufficiency of the evidence as to him, it is not necessary to deal with his additional contention, that denial of his motion for severance was prejudicial to his defense, Rule 14, F.R.Crim.P., and hence an abuse of discretion on the part of the trial judge. His argument as to this question parallels that of Huila (except that he did have separate counsel) and the point was preserved for appellate review in a similar manner. Since this contention if we sustained it, as we doubtless would if necessary, would entitle him only to reversal for a new trial, the disposition of his conviction by reversing and directing dismissal of the indictment as to him renders discussion of his second point superfluous.