PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/24/99
THOMAS K. KAHN
CLERK

_____

No. 97-6749

_____

D.C. Docket No. CR-97-9-5-CRB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN DEXTER COBB;
JERRY DEMETRIUS COBB,

Defendants-Appellants.

_____

No. 98-6113

_____

D.C. Docket No. 2:97-9-1CRB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZARKEY ARMSTEAD,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(August 24, 1999)**

Before CARNES, Circuit Judge, HILL, Senior Circuit Judge, and HOEVELER[*], Senior District Judge.

CARNES, Circuit Judge:

Defendants Jerry Cobb, Stephen Cobb, and Zarkey Armstead appeal their convictions for bank robbery, conspiracy to commit bank robbery, using a firearm in relation to a violent crime, and receiving stolen goods. Because the district court should have granted Stephen Cobb's motion to sever the trial so his brother and co-defendant, Jerry Cobb, could provide exculpatory testimony, we reverse Stephen Cobb's conviction. As to all other defendants and grounds for appeal, we affirm.

## I.  BACKGROUND

The charges in this case arose from the robbery of the Peoples Bank and Trust Company in Plantersville, Alabama on September 22, 1995. These three appellants were named with two other co-defendants in a four-count indictment in

_____

*Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

the Southern District of Alabama in January 1997. Jerry Cobb and Zarkey Armstead were charged in the first three counts of the indictment with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371; bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); and the use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Stephen Cobb was charged in count four of the indictment with the receipt and possession of funds stolen from a bank, in violation of 18 U.S.C. § 2113(c).

Stephen and Jerry Cobb were tried together. Zarkey Armstead, who remained a fugitive at the time of their trial, was later tried separately. Another defendant, Latonga Rivers, pleaded guilty to a lesser charge of misprision of a felony, with a government recommendation of leniency at sentencing, in exchange for her agreement to testify at trial as a government witness.[1]

On the morning of trial, Stephen Cobb renewed an earlier motion to sever his trial from Jerry Cobb's trial, advancing as a new reason for severance that he intended to call Jerry Cobb to offer exculpatory testimony on his behalf. The district court deferred ruling on the motion until the evidence had been heard.

---

[1] The fifth defendant, Sharone Goodwill, initially entered a guilty plea to count two of the indictment, but following a psychiatric evaluation was allowed to withdraw his plea, and the remaining charges against him were dismissed. Latonga Rivers testified that she did not know Goodwill, and that he had nothing to do with the robbery.

Following the close of the government's case, the motion was renewed and the court denied it.

At trial, Latonga Rivers provided most of the evidence for the government. She testified that she had driven the getaway car for Zarkey Armstead and Jerry Cobb, and she gave details about the robbery of the bank. She said Jerry Cobb had brandished a gun while robbing the bank, and that it was discharged in the course of the robbery. In addition, she stated that after the robbery, the trio made their way to Stephen Cobb's home, where Jerry Cobb and Armstead split the robbery proceeds with Stephen Cobb because he allowed them to use his place as a hideout. About $8,500 to $9,000 was stolen in the robbery.

The jury returned guilty verdicts against both Jerry and Stephen Cobb. Jerry Cobb was sentenced to 175 months imprisonment, five years supervised release, and restitution in the amount of $9,480.43. Stephen Cobb was sentenced to six months imprisonment, three years supervised release, and restitution in the same amount. At his subsequent trial, Zarkey Armstead was convicted and sentenced to 117 months imprisonment, three years supervised release, and restitution in the same amount. All three defendants were held jointly and severally liable for the restitution. The defendants appealed. Armstead's appeal has been consolidated with the Cobbs' appeal.

## II.  STANDARD OF REVIEW

We review the district court's denial of the motion for severance for abuse of discretion.  See, e.g., United States v. Talley, 108 F.3d 277, 279 (11th Cir. 1997).

## III.  ANALYSIS

Only one of the issues raised in this appeal merits extended discussion, and it is Stephen Cobb's contention the district court abused its discretion in denying his motion to sever so that his brother, Jerry Cobb, could provide exculpatory testimony on his behalf.[2]

---

[2] In addition to the issues discussed below, the Cobbs claim prosecutorial misconduct, and both Jerry Cobb and Zarkey Armstead challenge the sufficiency of the evidence that convicted them.  Stephen Cobb also argues that the Government's plea agreement with Latonga Rivers violates 18 U.S.C. § 201(c)(2).  These claims are meritless and do not require any discussion.  See Fed. R. App. P. 36-1.

There is also a Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), issue raised by both Cobbs that merits brief discussion. Among the Batson issues they raise is one that involves the use of a peremptory challenge against a mother of three who had never been married and was on welfare. Those facts, the Assistant United States Attorney thought, "reflected on her morality" and led him to strike her from the jury. The Cobbs' contention that the explanation given is not a valid basis for striking a juror miscomprehends the test.

Under Batson, the  reason for a peremptory strike that is challenged on race grounds does not have to be "valid" in any sense other than being race-neutral, nor does it have to relate to the case being tried.  See, e.g., Purkett v. Elem, 514 U.S. 765, 769, 115 S. Ct. 1769, 1771 (1995) (upholding a strike of a juror because he had "long, unkempt hair, a mustache, and a beard," a reason unrelated to the particular facts of the case);  United States v.Steele, 178 F.3d 1230, —, 1999 WL 425906 at *4 (11th Cir. June 25, 1999) ("[A] legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection")  (quotation and citation omitted). The reason stated for the strike in this case is materially identical to reasons that have been held to be race-neutral.  See, e.g., United States v. Munoz, 15 F.3d 395, 399 (5th Cir. 1994) (upholding a government strike of a juror because "she had children on welfare and apparently was unemployed"); United States v. Hughes, 970 F.2d 227, 231 (7th Cir. 1992) (upholding a government strike of a juror because she was young, unemployed, from an unstable background

Well before trial, Stephen Cobb filed several motions to sever his trial from that of his co-defendant, Jerry Cobb, on grounds that are irrelevant to our discussion here; those motions were denied. On the morning the trial began, however, Stephen Cobb renewed his motion to sever. This time, he stated that counsel for Jerry Cobb had indicated he would be willing to provide exculpatory testimony for his brother, Stephen, with respect to the sole charge against him – namely, receiving stolen funds. Specifically, Jerry Cobb would testify that he had given none of the money from the bank robbery to his brother. That would contradict the only evidence the government had against Stephen Cobb, which was Latonga Rivers' expected testimony that she saw Jerry Cobb give Stephen Cobb an equal share of the proceeds from the robbery.

After voicing his doubt that Jerry Cobb would waive his Fifth Amendment right against self-incrimination if called upon to testify in the subsequent trial of his brother, the district court told the parties:

> Here's what I'm going to do. I'm going to proceed to trial with both defendants and weigh during the course of the trial the potential prejudice to Stephen Cobb from the testimony of Latonga Rivers. Because I suspect she will be effectively impeached on cross-examination and/or other evidence, but I don't know. . . . [T]he proper

---

and an unmarried mother of three). We agree with the district court that the reason given was race neutral. We also reject the Cobbs' contentions that the procedure the district court used to consider the Batson challenges was flawed, and that its findings concerning the true reasons for the peremptory strikes were clearly erroneous.

6

course of action is for the Court to evaluate the facts elicited, the prejudicial tendency, the entire course of the trial, in order to make a proper determination as to (a), the prejudice of the testimony of Latonga Rivers and (b), the proffered value of a codefendant's testimony in view of that. . . . I have enough discretion, I think, under the circumstances to weigh the evidence very carefully as the evidence unfolds and then make that determination at some further point during the trial. So I'm going to deny the motion at this point and we will proceed.

It was within the district court's discretion to proceed in that manner.

During the trial, as predicted, the sole evidence against Stephen Cobb was the testimony of Latonga Rivers, who stated that she saw Jerry Cobb give Stephen an equal share of the loot from the robbery, in exchange for Stephen letting the other co-defendants use the trailer where he lived as a hideout after the robbery. At the close of the government's case, Stephen Cobb renewed his motion to sever, arguing that he would otherwise be unable to call his brother to present exculpatory testimony on Stephen's behalf. The district court denied the motion, on the ground that Jerry Cobb had conditioned his willingness to testify on his case being tried before his brother's.

A district court may sever the trial of co-defendants whenever it appears that a defendant would be prejudiced by his joint trial with a co-defendant. See Fed. R.

7

Crim. P. 14.[3]  "Nevertheless, because of the well-settled principle that it is preferred that persons who are charged together should also be tried together, particularly in conspiracy cases, the denial of a motion for severance will be reversed only for abuse of discretion."  United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990) (quotation and citation omitted); see also Zafiro v. United States, 506 U.S. 534, 537, 113 S. Ct. 933, 937 (1993) (noting "a preference in the federal system for joint trials of defendants who are indicted together").  To justify severance, the defendant must "demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense."  United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997) (quotation and citation omitted).

Where a defendant argues for severance on the ground that it will permit the exculpatory testimony of a co-defendant, he "must show: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial."  United States v. Machado, 804 F.2d 1537,

_____

[3] The Rule states, in relevant part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed. R. Crim. P. 14.

1544 (11th Cir. 1986); see also United States v. Harris, 908 F.2d 728, 739 (11th Cir. 1990); United States v. Martinez, 486 F.2d 15, 22 (5th Cir. 1973); Byrd v. Wainwright, 428 F.2d 1017, 1019-20 (5th Cir. 1970). Even if the defendant makes such a showing, the court must still "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." Machado, 804 F.2d at 1544; accord United States v. Harris, 908 F.2d 728, 739 (11th Cir. 1990) (quoting United States v. DeSimone, 660 F.2d 532, 540 (5th Cir. 1981)).

Determinations as to whether severance is required are committed to the sound discretion of the district court, and we do not lightly decide that a district court has abused its discretion in denying a motion for severance. This is one of those rare cases, however, where the appellant presents a compelling argument that he suffered "prejudice resulting in the denial of a fair trial flow[ing] from the failure to grant the motion" for severance. Martinez, 486 F.2d at 22 (quotation and citation omitted).

Stephen Cobb's need for his brother's exculpatory testimony was clear. The sole evidence against him on the charge of receiving stolen funds was the testimony of Latonga Rivers, who said she had seen Jerry Cobb handing Stephen

9

an equal share of the money from the bank robbery.  Furthermore, the Assistant United States Attorney accurately disclosed to the court before the trial began  that the only evidence against Stephen Cobb would be Latonga Rivers' testimony.  Her testimony against Stephen Cobb would have been  flatly contradicted by Jerry Cobb's testimony on Stephen's behalf if a severance had been granted,  and the district court was informed of that before the trial began.  As described to the court by Jerry Cobb's counsel in the course of discussion about the severance motion, Jerry's  testimony would be that "he did not give any money to his brother."  Because the only other person who was allegedly present when Rivers saw Jerry Cobb present his brother with his share of the spoils from the robbery, Zarkey Armstead, was a fugitive at the time of trial, Jerry Cobb "was the only individual other than [Stephen Cobb] himself in a position directly to rebut the government's . . . evidence" against Stephen Cobb.  Martinez, 486 F.2d at 23; see also United States v. Neal, 27 F.3d 1035, 1047 (5th Cir. 1994) (testimony from leader of conspiracy that co-defendants did not participate in or further conspiracy was "essential to [co-defendants'] claims of innocence").

There was thus a pressing need for this directly exculpatory testimony, which would have contradicted the only evidence against Stephen Cobb.  Without it, Stephen Cobb suffered significant prejudice to his ability to present adequate

10

evidence in his own defense.  Thus, the first three factors required to make a threshold showing that severance is required under the Machado test – that the defendant demonstrate a bona fide need for exculpatory testimony, and set out the substance and exculpatory nature of that testimony – were met.

The district court did not appear to question the existence of those first three Machado factors, instead basing its denial of the severance motion on the fourth factor, which requires  that "the codefendant would indeed have testified at a separate trial."  Machado, 804 F.2d at 1544.  The district court  noted that this requirement is not met where the co-defendant conditions his testimony on the order of the co-defendants' severed trials, and there is authority for that proposition.  See, e.g., United States v. Broussard, 80 F.3d 1025, 1038 (5th Cir. 1996) (co-defendant's offer to provide exculpatory testimony, contingent upon his being tried first, does not establish that he would in fact testify if a severance were granted);  Mack v. Peters,  80 F.3d 230, 236-37 (7th Cir. 1996) (offer to testify that is conditioned on order of trials does not require severance); see also United States v. Funt, 896 F.2d 1288, 1298 (11th Cir. 1990) ("An offer to testify, conditioned upon being effectively removed from jeopardy or upon future evidentiary rulings, does not satisfy the fourth Machado threshold prong when the district court concludes that the defendant will not in fact testify.").

The district court clearly erred, however, in treating Jerry Cobb's offer to testify on his brother's behalf as conditioned on his case being tried first.   In response to the district court's inquiry concerning what order of trial would be appropriate, Stephen Cobb's counsel did recommend that Jerry Cobb be tried first. But that recommendation was not made by Jerry Cobb or his counsel, it was made by Stephen Cobb's counsel.  Moreover, it clearly was a suggestion and not a condition.  When pressed on the matter, Jerry Cobb's counsel told the court, "All I can tell the Court is that my client said that he would take the stand in a separate trial."

The district court did not ask directly whether Jerry Cobb would be willing to testify on Stephen Cobb's behalf if Stephen's trial came first. The court did ask, however,  whether Jerry Cobb would be willing to testify on his brother's behalf even if his own conviction was still awaiting appeal, and he thus faced the possibility of being retried after he had testified for his brother.  Jerry Cobb's counsel assured the court that his client understood he might waive his Fifth Amendment right against self-incrimination in these circumstances, and he was still willing to testify.  Thus, there was no evidence before the district court that Jerry Cobb's offer to provide exculpatory testimony for his brother was contingent

upon the order of the trials, and every indication from his counsel showed that it was not contingent.[5]

Because the district court erroneously denied severance on the ground that the motion did not meet one of the threshold requirements under Machado, it did not reach the other four factors a court must consider in a severance motion based on a co-defendant's exculpatory testimony: the significance of the testimony in relation to the defendant's theory of the case; the extent of prejudice caused by the absence of the testimony; the interests of judicial administration and economy; and the timeliness of the motion. See Machado, 804 F.2d at 1544. We think those factors also weighed in favor of severance in this case, or at least did not weigh against it. We have already discussed the significance of Jerry Cobb's exculpatory testimony to Stephen Cobb's case, and the prejudice caused by its absence. As for judicial administration and economy, the Cobbs' joint trial took only one day to complete, and a separate trial for Stephen Cobb would be unlikely to take longer than one more day. Trials do not get much shorter than that, so the cost to the system of a severance in this case is minimal. Finally, as we will discuss in greater detail later, although the district court might have done otherwise, it treated the

---

[5] By comparison, in United States v. Reavis, 48 F.3d 763 (4th Cir. 1995), which the district court cited in support of its denial of the severance motion, the co-defendant explicitly conditioned his willingness to testify on his being tried first. See Reavis, 48 F.3d at 767.

13

severance motion as timely. Given all these considerations, and especially in light of its reliance on the erroneous notion that Jerry Cobb's offer to testify was conditional, it would be difficult not to conclude that the district court's denial of Stephen Cobb's severance motion was an abuse of discretion.

The government offers three reasons why we should not reach that conclusion. First, the government contends that the substance of Jerry Cobb's proffered testimony was too vague to support the conclusion that severance was necessary. In affirming denials of severance motions, we have held that a defendant who moves for severance on the basis of possible exculpatory testimony from a co-defendant must describe in some specificity "the substance of the [co-defendant's] testimony, including the specific exonerative facts." United States v. Beale, 921 F.2d 1412, 1429 (11th Cir. 1991). See also United States v. Smith, 918 F.2d 1551, 1560-61 (11th Cir. 1990); Harris, 908 F.2d at 739. In this case, however, the exonerative significance of Jerry Cobb's proffered testimony was plain. The government's only witness against Stephen Cobb said Jerry Cobb had handed his brother stolen funds; Jerry Cobb's counsel said his client was prepared to testify he had not done so. That is a plain enough description of the substance of Jerry Cobb's proffered testimony.

Second, the government contends that because Jerry Cobb had two prior convictions, it is doubtful Stephen Cobb would have called his brother to testify if their trials had been severed.  Our concern with whether a co-defendant will testify for the defendant in a separate trial is limited to determining whether the co-defendant is <u>likely</u> to testify, not whether he is certain to do so.  See <u>Taylor v. Singletary</u>, 122 F.3d 1390, 1393 (11th Cir. 1997) (quoting <u>Byrd</u>, 428 F.2d at 1022). In the circumstances of this case, we think Stephen Cobb succeeded in showing he likely would have called his brother to testify on his behalf, and his brother likely would have testified when called.  Stephen Cobb's attorney represented to the court that Jerry Cobb would be called as a witness if severance were granted, and Jerry Cobb's attorney represented to the court he would testify if called. As the government conceded to the district court in the course of arguing the severance motion, the only evidence it had to corroborate its claim that Stephen Cobb had received some of the proceeds from the bank robbery was Latonga Rivers' testimony.  Similarly, because Stephen Cobb did not testify and Zarkey Armstead was still at large, the only evidence he had to directly refute Rivers' testimony was Jerry Cobb's testimony.

To be sure, as the government pointed out at oral argument, Rivers' testimony was itself weak: on cross-examination, the defense elicited from her the

15

information that she had experienced auditory and visual hallucinations in the past, that she had once attempted suicide, and that she had taken psychotropic medication. But the district court found Rivers' testimony to be sufficiently credible to go to the jury for consideration, and the jury found it credible enough to convict Stephen Cobb. In keeping with the district court's invitation to bring up the severance motion again at the close of the government's case, Stephen Cobb did so, indicating that he still wanted a severance so he could call Jerry Cobb to testify. Whatever weaknesses Jerry Cobb might have as a witness, we think Stephen Cobb has shown he would have offered his brother's exculpatory testimony had a severance been granted, and that his brother would have testified.

Third, the government argues the severance motion was untimely. Stephen Cobb's initial severance motion was filed well before trial, but it was not until the morning of trial that he amended it to specify his intention to seek the exculpatory testimony of his brother. If the district court had based its ruling upon untimeliness, we might well hold that denial of the motion was not an abuse of discretion. The district court did not do that, however. Instead, the court decided to consider the motion, and invited Cobb to renew it upon the close of the government's case. When he did so, the court decided the motion on its merits without even alluding to whether it had been timely filed.

16

In light of the importance of Jerry Cobb's exculpatory testimony, which directly refuted the only testimony against Stephen Cobb on the sole charge against him; the clear indication that Jerry Cobb would be called by and would testify for Stephen Cobb if a severance were granted; and the low cost in terms of the resources needed to conduct two one-day trials instead of one, the district court's denial of the severance motion was an abuse of discretion. It caused Stephen Cobb "prejudice resulting in the denial of a fair trial." Martinez, 486 F.2d at 22 (quotation and citation omitted). That prejudice requires reversal of his conviction.[6]

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the conviction of Stephen Cobb and REMAND for further proceedings consistent with this opinion. We AFFIRM the convictions of Jerry Cobb and Zarkey Armstead.

---

[6] Because we reverse Stephen Cobb's conviction for failure to sever his trial, we need not consider his argument that the district court erred in holding him jointly and severally liable to make restitution for the full amount stolen in the bank robbery.