# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2019

Lyle W. Cayce
Clerk

No. 18-40857

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MIGUEL ARELLANO,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CR-38-2

Before KING, JONES, and DENNIS, Circuit Judges.

PER CURIAM:*

Miguel Arellano was convicted at trial of conspiring to possess five or more kilograms of cocaine with intent to distribute, and he was sentenced to 188 months' imprisonment. He now appeals various aspects of his conviction and sentence, none of which he objected to before the district court. Because he has not sufficiently demonstrated error, we affirm the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40857

**I.**

The defendant in this case, Miguel Arellano, was arrested after delivering nearly five kilograms of cocaine to an undercover police officer. In the car with him when he delivered the drugs was a duffel bag containing some articles of clothing, other personal effects, and a closed pouch containing an unloaded handgun and two magazines of ammunition.

Arellano was indicted by a grand jury for conspiracy to possess five kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and he entered into plea negotiations with the government. An agreement was evidently reached, and the government then charged Arellano via information with conspiracy to possess five hundred grams of cocaine, a crime with a lesser mandatory minimum sentence, *see* 21 U.S.C. § 841(b)(1).

At a hearing before the magistrate judge, the elements of the charge were read aloud, and Arellano admitted to committing each of them.[1] The prosecutor then read the factual basis for the charge, which included that "Arellano knew that the amounts involved during the term of the conspiracy involved at least 3.5 kilograms but less than 5 kilograms[2] of a mixture or substance containing a detectable amount of cocaine" and that "Arellano's role in the conspiracy was to supply co-conspirators with kilogram quantities of cocaine from various sources." Arellano agreed that everything that the prosecutor had recited was accurate.

---

[1] One of those elements was "that the defendant knew or reasonably should have known that the scope of the conspiracy involved 500 grams or more of a mixture or substance containing a detectable amount of cocaine."

[2] Although the same statutory minimum sentence applies for offenses involving anywhere between five hundred grams and five kilograms of cocaine, *see* § 841(b)(1), the sentencing guidelines operate on a more granular level, *see* U.S. Sentencing Guidelines Manual § 2D1.1(c).

2

No. 18-40857

The magistrate judge then asked Arellano to describe, in his own words, what he had done that violated the law. Arellano stated, "I was asked to do a favor, deliver a package to a friend. And I showed up. I turned it over. . . . And agents came and arrested me . . . ." The magistrate judge interrupted, asking, "Did you know what was in the package?" to which Arellano responded, "No, ma'am." The magistrate judge then told Arellano that she could not accept his guilty plea, leading to an off-the-record discussion between Arellano and his counsel.[3] The magistrate judge told Arellano that "there has to be a factual basis to support [his] plea of guilty" and that if he "didn't know what [he was] delivering, then there is not a factual basis to support the plea." After conferring further with his client, Arellano's trial counsel said, "I think we're done, your Honor," and the hearing was adjourned.

The government issued a superseding indictment, again charging Arellano with conspiracy to possess five kilograms of cocaine with intent to distribute, as well as for possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). The case proceeded to trial.

Before the trial began, the district court asked whether, despite the plea offers that it "presume[d]" that Arellano had received, Arellano wanted "to maintain [his] innocence and go to trial." Arellano stated that he did. At trial, Arellano was acquitted of the firearm-possession charge but convicted of the drug-conspiracy charge. The jury specifically found that Arellano "was individually responsible for or could reasonably have foreseen that the conspiracy involved" at least five kilograms of cocaine.

The presentence investigation report determined that Arellano's base offense level was 30, because his offense involved between five and fifteen

---

[3] Arellano is represented on appeal by different counsel than represented him before the district court.

No. 18-40857

kilograms of cocaine, and that his offense level should be increased by two, because Arellano possessed a dangerous weapon—that is, the firearm—in relation to the crime. Arellano's counsel filed no objections to the presentence report and confirmed his lack of objections at the sentencing hearing. The district court adopted the presentence report's factual findings and guideline calculations and sentenced Arellano to 188 months' imprisonment, at the high end of the guideline range. This appeal followed.

## II.

Arellano raises three arguments on appeal. First, he argues that it was error for the magistrate judge to refuse his guilty plea. Second, he argues that the evidence failed to connect him to at least five kilograms of cocaine. And third, he argues that his sentence enhancement for possession of a weapon was unsupported by the evidence. Arellano acknowledges that none of these arguments was preserved below.

## A.

A criminal defendant has "no absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Indeed, a district court may not accept a guilty plea unless it has first "determine[d] that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The factual basis cannot be implied from the fact that the defendant entered a plea"; rather, "[t]he sentencing court must satisfy itself, through an inquiry of the defendant or examination of the relevant materials in the record, that an adequate factual basis exists for the elements of the offense." *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992); *see also Santobello*, 404 U.S. at 261 ("[T]he sentencing judge must develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge."). Once this requirement is satisfied, the district court may still reject the guilty plea for "good reason." *United States v. Martinez*, 486 F.2d 15, 20

(5th Cir. 1973).[4] This decision "is committed to the 'sound judicial discretion' of the trial judge." *Id.* (quoting *Santobello*, 404 U.S. at 262); *cf. United States v. Foy*, 28 F.3d 464, 472 (5th Cir. 1994) ("A district court's rejection of a plea agreement is reviewed for abuse of discretion.").[5]

The record in this case contains no suggestion that the magistrate judge abused her discretion in refusing to allow Arellano to plead guilty while maintaining that he was unaware that he was transporting cocaine. The prosecution's theory of the drug conspiracy was that Arellano was a courier. This theory followed straightforwardly from the evidence: undercover officers had arranged to purchase cocaine from a target, and Arellano was the man who showed up with the drugs. Thus if Arellano did not know that he was delivering drugs, then it would be difficult to conclude that he "knew of the existence of the agreement," a necessary element of the offense, *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012).

Arellano argues that denying knowledge of the contents of his delivery did not destroy the factual basis for his guilty plea because he had admitted to the prosecutor's recitation of the facts—which included his knowing about the drug conspiracy—and delivering *anything* in furtherance of that conspiracy would have been criminal. While Arellano may be correct that a conviction for

---

[4] Both parties cite to *Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973), in which we spoke of a "right to plead guilty." That language, however, was meant to distinguish decisions that defense attorneys may make from those that must be made by defendants themselves. *See id.* at 178-80. Although criminal defendants have a "personal fundamental right" to decide for themselves whether to plead guilty, *id.* at 179, it is a longstanding principle that they have no "absolute right" for their guilty pleas to be accepted, *Martinez*, 486 F.2d at 20 (quoting *Lynch v. Overholser*, 369 U.S. 705, 719 (1962)), which is what this case is about.

[5] The parties dispute the consequence of Arellano's failure to object to the court's refusal to accept his guilty plea. Citing a case involving the related but distinct context of a challenge to an *acceptance* of a guilty plea, *United States v. Reyes*, 300 F.3d 555, 558 (5th Cir. 2002), Arellano argues that our review is for plain error. By contrast, the government asserts that Arellano's pretrial statement that he wished to proceed to trial, *see supra* Part I, waived his right to appeal altogether. Because we conclude that the magistrate judge acted well within her discretion, we need not address this issue.

conspiring to possess drugs does not necessarily require possession of drugs, he did not say anything about a drug conspiracy when summarizing his conduct. Rather, he stated only that he was "deliver[ing] a package to a friend," in language that failed to inculpate him whatsoever. Moreover, after having two opportunities to discuss the issue with his counsel, he made no attempt to amend his statement or otherwise explain what made him guilty of the crime charged. Instead, his counsel ended the hearing.[6] Under the circumstances, we cannot say that the magistrate judge abused her discretion in rejecting the plea.

**B.**

Next, Arellano argues that the evidence at trial was insufficient to tie him to at least five kilograms of cocaine. We typically review such an argument "with substantial deference to the jury verdict, asking only 'whether a rational jury could have found each essential element of the offense beyond a reasonable doubt.'" *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc) (citation omitted). Here, however, Arellano's trial counsel failed to move for a judgment of acquittal, and thus we apply an "even stricter" standard of review—plain error. *Id.* at 328, 330.

Reversal on plain-error review requires "an error or defect" that is "clear or obvious" and that "affected the appellant's substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citing *United States v. Olano*, 507 U.S. 725, 732-34 (1993)). In a challenge to the sufficiency of evidence, "an error is 'clear or obvious' only if the record is devoid of evidence pointing to guilt, or the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Suarez*, 879 F.3d 626, 630-31 (5th Cir. 2018) (cleaned up) (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir.

---

[6] The record reveals no subsequent attempt by Arellano to plead guilty.

2007)). If the district court committed such an error, we then have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett*, 556 U.S. at 135 (alteration in original) (quoting *Olano*, 507 U.S. at 736).

The question at issue here is whether there was sufficient evidence to support the jury's finding that Arellano "was individually responsible for or could reasonably have foreseen that the conspiracy involved" at least five kilograms of cocaine. *See United States v. Gonzalez*, 907 F.3d 869, 874 (5th Cir. 2018) (noting that defendant will be held liable for "only those amounts of drugs that he knew or reasonably could have known or believed were involved in the conspiracy" (citation omitted)). It is undisputed that Arellano had been in possession of only 4.949 kilograms of cocaine when he was arrested.[7] And although the government points to an array of evidence that their target dealt in larger quantities of cocaine, the government identifies no direct evidence that Arellano himself was involved in or aware of any drug deals other than the one during which he was arrested.

On the other hand, a rational jury could have concluded that Arellano would have reasonably foreseen that the drug deal he was taking part in, which involved the use of a car with a secret compartment, was not the full extent of the conspiracy. *Cf. Gonzalez*, 907 F.3d at 875 ("[A]n individual dealing in a sizable amount of controlled substances ordinarily would be presumed to recognize that the drug organization with which he deals extends beyond his universe of involvement." (citation omitted)). Or a rational jury could have

---

[7] The government argues that Arellano was *supposed* to be delivering five kilograms, but their evidence for that is an agreement to which Arellano was not a party. Although Arellano was ultimately entrusted with the delivery, there is no evidence that he knew how much cocaine the undercover officer was expecting to receive.

concluded that Arellano, who had in his possession a handgun with an obliterated serial number and three cell phones, was more than a one-time courier. To be sure, this is not strong evidence that Arellano foresaw that the conspiracy involved additional cocaine, but under the plain-error standard of review, "close calls must be resolved in favor of the jury verdict," *Delgado*, 672 F.3d at 332 n.11. This is one such call. Arellano has not demonstrated plain error.

## C.

Finally, Arellano argues that it was error for the district court to increase his sentence based on his possession of a handgun at the time of his arrest. Because this issue was also not preserved, we again review the district court's determination for plain error. *See United States v. Huerra*, 884 F.3d 511, 519 (5th Cir. 2018).

Although the jury did not find beyond a reasonable doubt that Arellano possessed a firearm in furtherance of a drug-trafficking crime, Arellano acknowledges that district court needed only a preponderance of the evidence to find a connection between the gun and the crime.[8] Still, he argues that the circumstances in which the gun was found—unloaded, in a zippered pouch inside a larger zippered bag along with his clothing and toiletries—made it improbable that there was any connection between the drug deal and the gun.

Under the sentencing guidelines, "[t]he government may satisfy its burden of proving a connection by 'providing evidence that the weapon was found in the same location . . . where part of the transaction occurred.'" *United States v. Mitchell*, 31 F.3d 271, 278 (5th Cir. 1994). Here, it was. Thus, the district court could apply the sentence enhancement "unless it was clearly

---

[8] "[A] sentencing court may consider conduct of which a defendant has been acquitted." *United States v. Watts*, 519 U.S. 148, 154 (1997).

improbable that the handgun was connected to the drug transaction." *United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990). In this regard, we have said that the enhancement can apply even when the gun at issue is inoperable, unloaded, and locked in a glove compartment. *See id.* Given this caselaw, the district court's finding of a connection was not clearly or obviously erroneous.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.