**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Giliatt GOMEZ–GOMEZ, Pedro Vasquez-Castro, Luis Armando Rios-Rico, Nestor Villalobos-Lorduiz, Thomas Charley Snow, Defendants-Appellants.**

No. 86–5328.

United States Court of Appeals,
Eleventh Circuit.

July 27, 1987.
Rehearing and Rehearing En Banc
Denied Sept. 2, 1987.

Federico A. Moreno, Thornton, Rothman & Moreno, P.A., John W. Thornton, Miami, Fla., for Rios-Rico.

Theodore J. Sakowitz, Federal Public Defender, Faith Mesnekoff, Asst. Federal Public Defender, Miami, Fla., for Villalobos-Lorduiz, Gomez-Gomez, and Vasquez-Castro.

Leon B. Kellner, U.S. Atty., Linda C. Hertz, Mayra R. Lichter, Sonia E. O'Donnell, Asst. U.S. Attys., Miami, Fla., for the U.S.

Before RONEY, Chief Judge,
VANCE, Circuit Judge, and
PITTMAN *, Senior U.S. District Judge.

VANCE, Circuit Judge:

Jose Gilliatt Gomez-Gomez, Pedro Vasquez-Castro, Luis Armando Rios-Rico, Nestor Villalobos-Lorduiz, and Thomas Charley Snow appeal their convictions and sen-

---

* Honorable Thomas V. Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

tences resulting from drug smuggling. We affirm.

On May 21, 1985, the Coast Guard cutter *Escape* was patrolling the high seas near Key West when it spotted the yacht *Alpha*.[1] The *Alpha* was approximately 40–feet long, in poor condition and riding bow down in the water. After the government of Venezuela denied the *Alpha*'s claim to Venezuelan registry, the Coast Guard decided to board her as a stateless vessel.

The boarding party discovered Gomez-Gomez, Vasquez-Castro, Rios-Rico, Villalobos-Lorduiz, and Snow on board the *Alpha*. The forward cabin was stuffed with bales of marijuana, one of which was open. More bales lay behind the center cabin. The boarding party found no fishing, diving, salvage or dredging equipment. The interior of the *Alpha* had been gutted, there were no discernible living quarters, and the bathroom was unusable. The odor of marijuana permeated the vessel.

All five appellants were indicted for conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 955c (Count I), and possession with intent to distribute marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 955a(a) (Count II). On the motion of defendant Rios-Rico, the district court severed Snow from the other appellants.[2] The government then entered into plea agreements with the remaining defendants under which they would plead guilty to Count I (the conspiracy charge) and the government would move to dismiss Count II at the time of sentencing. Accordingly, Gomez-Gomez, Vasquez-Castro, Rios-Rico, and Villalobos-Lorduiz entered guilty pleas.[3]

At the scheduled sentencing, however, the prosecutor informed the court that three of the defendants had told pretrial services that they lacked knowledge about the marijuana aboard the boat. Villalobos-Lorduiz claimed that he was hired to rescue the vessel, rather than to smuggle marijuana. Vasquez-Castro and Rios-Rico also asserted their ignorance. The fourth defendant, Gomez-Gomez, stated that he was hired as a mechanic and was unaware of the marijuana until his cooperation was coerced.

The court held an evidentiary hearing to resolve the conflicts between the pre-sentence reports and the guilty pleas. Gomez-Gomez testified as to his innocence and stated that he pled guilty under the misapprehension that he would still go to trial. The court granted Gomez-Gomez's motion to withdraw his plea[4] and, alternatively, rejected the plea because of the protestations of innocence. Villalobos-Lorduiz reiterated at the hearing that he learned of the marijuana only after the Coast Guard informed him of its presence.[5] The court set aside Villalobos-Lorduiz's plea "on the basis of the representations that he is innocent." Similarly, the court rejected Vasquez-Castro's plea because he continued to protest his innocence.

On the other hand, Rios-Rico claimed that he was guilty and stated that he wanted to proceed with the plea. The prosecutor, however, expressed concern over Rios-Rico's guilty plea. The court then discussed the situation with the prosecutor and Rios-Rico's attorney:

The Court: I want to start this all over again.... I would like to have you come

---

**1.** This encounter took place off Mysteriosa Bank which is a traditional rendezvous for the transfer of narcotics from one vessel to another. The majority of commercial shipping traffic, other than fishing vessels, avoids this area.

**2.** Snow's first trial ended in a hung jury. Prior to the second trial, Snow reinstated the motion for severance, but the court, after hearing Snow's testimony at the first trial, denied the motion.

**3.** The judge postponed sentencing in order to review the pre-sentence investigation reports.

**4.** The withdrawal of Gomez-Gomez's guilty plea breached the plea agreement, which required that he plead guilty.

**5.** The judge made the following statement to Villalobos-Lorduiz:

If you want me to I will set aside this plea because if you are innocent and what you say is true, I couldn't in good faith accept this plea because you are telling me you are innocent and it couldn't be fair.

The judge similarly admonished Vasquez-Castro.

forward and again express the government's position.

The Government: The government's position is though I appreciate the fact Mr. Rios-Rico wishes to resolve this matter if, indeed, he got on board that boat, not knowing it had marijuana, not intending to possess marijuana, not intending to have anything to do with marijuana, got on board, discovered it was there and couldn't do anything about it, then he cannot enter a plea of guilty because he is not guilty.

The Court: What do you say about this, counsel?

The Defense: Your Honor, I am here caught between a rock and a hard place. I agree with the government. Normally, I wouldn't allow a client to plead guilty. However, my client is insisting on wanting to plead guilty. I don't know what to do.

The Court: I will take the bull by the horns. I think the government is correct. I am rejecting the plea and setting it for trial.

Before trial, Rios-Rico moved to reinstate his guilty plea and filed a letter with the court admitting guilt. Villalobos-Lorduiz and Vasquez-Castro adopted Rios-Rico's letter to admit their own guilt. On the morning of trial, Snow also offered to plead guilty. The government, however, stated that it would only accept the guilty pleas if all of the defendants pled guilty. Gomez-Gomez continued to assert his innocence and, after a trial on the merits, all five appellants were convicted on both counts.

The principal issue on appeal is whether the trial court erred in refusing to accept Snow's guilty plea and in setting aside the guilty pleas of the others. The starting point for our analysis is the well-settled proposition that a defendant has no absolute right under the United States Constitution or under Fed.R.Crim.P. 11 to have his guilty plea accepted by the court. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970). It is equally well-settled that a trial judge's rejection of a guilty plea is governed by an abuse of discretion standard. *Santobello*, 404 U.S. at 262, 92 S.Ct. at 498; *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981); *United States v. Bean*, 564 F.2d 700, 702–03 (5th Cir.1977).

Appellants argue, however, that once a trial judge accepts a guilty plea, he limits his discretion to set it aside. We disagree. Fed.R.Crim.P. 11(f) explicitly provides that,

*Notwithstanding the acceptance of a plea of guilty,* the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(emphasis added). This rule avoids an objective test, such as whether a factual basis exists for the plea. *See United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); 1 Wright, *Federal Practice and Procedure* § 174 (1982). By making "clear reference to the trial judge's subjective satisfaction," the rule adopts a subjective test: Is the judge satisfied that a factual basis exists for the plea? *Id; see also United States v. Montoya-Camacho*, 644 F.2d 480, 486 (5th Cir. Unit A 1981). This subjective standard affords the judge broad discretion to set aside a guilty plea,[6] and the explicit language of the rule provides that this discretion continues until the judge has exhausted his responsibilities under Rule 11. *See United States v. Hecht*, 638 F.2d 651 (3d Cir.1981); *see also United States ex rel. Metz v. Maroney*, 404 F.2d 233, 236 (3d

---

**6.** All the same, the judge must make a reasoned decision supported by the record:

We must review the exercise of [the judge's] discretion, however, if an appeal is taken from it and we must do so on the record of the Rule 11 proceeding. It is therefore incumbent upon the judge to produce a record on the basis of which we can determine that his discretion was not abused.

*United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *see also United States v. Montoya-Camacho*, 644 F.2d 480, 486 (5th Cir. Unit A 1981).

Cir.1968), *cert. denied,* 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969).[7]

In order to safeguard the rights of defendants, Rule 11 strictly confines a judge's ability to accept a guilty plea. Proper operation of these safeguards demands that the judge retain broad discretion to set a guilty plea aside, at least until he has fully discharged his Rule 11 responsibilities. Requiring that the judge assure himself of the plea's factual basis is but one of several ways the rule ensures that a guilty plea results from a voluntary and intelligent decision. *See Willett v. Georgia,* 608 F.2d 538, 540 (5th Cir.1979); [8] *see also McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (rule protects defendant who does not realize that his conduct actually fell outside the definition of the charged offense). We undermine these protections unless we give the utmost deference to the decision of the trial judge in rejecting guilty pleas. It is far better for a court to err on the side of rejecting a valid guilty plea than to violate a defendant's constitutional rights by entering judgment on a defective plea.

 In the present case, the pre-sentence reports and appellants' testimony at the evidentiary hearing severely eroded the court's confidence in the factual basis of their guilty pleas. Of all the appellants, only Rios-Rico consistently maintained his culpability and even he made exculpatory statements.[9] When a defendant attempts to couple a guilty plea with an assertion of facts that would negate his guilt, a judge may properly treat this assertion as a protestation of innocence. Though a judge may enter judgment upon a guilty plea offered under these circumstances, he is not required to do so. *North Carolina v. Alford,* 400 U.S. 25, 38 nn. 10, 11, 91 S.Ct. 160, 167–68 nn. 10, 11, 27 L.Ed.2d 162 (1970). In fact, the Advisory Committee Note to the 1974 amendment to Rule 11 observes:

> The procedure in such case would seem to be to deal with this as a plea of nolo contendere, the acceptance of which would depend upon the judge's decision as to whether acceptance of the plea is consistent with "the interest of the public in the effective administration of justice" [new rule 11(b)]. The defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving the issue unresolved, thus complicating subsequent correctional decisions.

In summary, we hold that when a defendant casts doubts upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against the plea.

Finally, the appellants contend that a pre-sentence report cannot form the basis for a decision to vacate a guilty plea. The Advisory Committee Note specifically rejects this position:

> An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the pre-sentence report when one is available, or by whatever means is appropriate in a specific case.

*Id.* Here, the judge's decision was based not only on the pre-sentence reports, but also on the results of an evidentiary hear-

---

7. The outcome of the present case may be compared to the result in *United States v. Cannon,* 807 F.2d 1528 (11th Cir.1986), where we held that the district court lacked the authority to vacate the defendant's guilty plea. In contrast to the present case, the district court in *Cannon* did not act pursuant to Rule 11 and, in fact, had discharged its responsibilities under that rule.

8. "Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of a free and intelligent choice, various state and federal court decisions properly cau-

tion that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, ... and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence ..." *Willett,* 608 F.2d at 540 (*quoting North Carolina v. Alford,* 400 U.S. at 38 n. 10, 91 S.Ct. at 167 n. 10).

9. In his pre-sentence report, Rios-Rico stated that he did not discover the marijuana until after the boat was at sea.

ing during which the judge interviewed the defendants and attorneys on both sides. We think that the judge's inquiry demonstrated exactly the high level of scrutiny required whenever a defendant relinquishes his constitutional right to trial.[10]

AFFIRMED.

---

**10.** Appellants Gomez-Gomez, Vasquez-Castro and Villalobos-Lorduiz also argue that it was reversible error for the trial judge not to have recused himself after reading the pre-sentence investigation reports. This contention is without merit. *See United States v. Clark,* 605 F.2d 939 (5th Cir.1979). Similarly, the trial court acted within its discretion when it denied Snow's motion for severance in the second trial. The statements that Snow complains of did not result in compelling prejudice. *See United States v. Kerris,* 748 F.2d 610, 615 (11th Cir.

1984). Finally, we think there was sufficient evidence to support Snow's convictions. The jury was free to disbelieve Snow and reject his testimony as a complete fabrication. *United States v. Cotton,* 770 F.2d 940, 945 (11th Cir. 1985). The jury could easily infer Snow's guilt from his presence on the marijuana laden boat under the circumstances revealed by the evidence. This is especially true since the persons who Snow claims forced him to navigate the boat were not on board at the time that he was arrested.