[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12510
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00133-CLS-MHH-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID EARL ALLEN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 5, 2014)

Before TJOFLAT, PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

David Earl Allen appeals his convictions and sentence of 97 months of

imprisonment for conspiring to distribute and possess with intent to distribute five

grams or more of methamphetamine, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and distributing five grams or more of methamphetamine, see id. § 841(a)(1), (b)(1)(B).  Allen argues for relief from his convictions on the ground that the district court erred when it refused to accept his plea of guilty to the distribution offense and later when it denied his motion for a judgment of acquittal on the charge of conspiring to distribute methamphetamine.  Allen also challenges the enhancement of his sentence for obstruction of justice and the denial of relief under the safety valve.  We affirm.

## I. BACKGROUND

Allen and his coconspirators were charged, in a six-count indictment, for crimes related to their conspiracy to distribute methamphetamine.  Allen was indicted for two crimes: conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine between January 24, 2011, and August 19, 2011, id. §§ 841(a)(1), 841(b)(1)(A), 846, and distributing five grams or more of methamphetamine on August 19, 2011, id. §§ 841(a)(1), (b)(1)(B). Allen initially pleaded not guilty to the charges.

Allen entered a written agreement to plead guilty to distributing methamphetamine in exchange for the dismissal of his charge for conspiracy and for recommendations by the government to reduce his offense level for his acceptance of responsibility and to impose a sentence at the low end of the

2

advisory guidelines range.  The factual basis stated that Allen agreed to sell a confidential informant $1,600 of methamphetamine; the informant delivered the cash to Allen at his tile shop; Allen handed the money to Andres Hernandez, who left the shop in Allen's truck to obtain the methamphetamine; the informant also left Allen's shop and later returned after Allen notified him that the drugs had been delivered; the informant collected the methamphetamine, which was lying on the floor of the shop wrapped inside a towel; and Allen also sold the informant half of a pound of marijuana for $650, which was wrapped in a towel.  When tested, the methamphetamine weighed 22.2 grams.

At the change of plea hearing, Allen tendered a plea of guilty and stated that he had not been coerced to change his plea to guilty.  But when asked if he was tendering his plea of guilty voluntarily, Allen stated that his father had received a telephone call in which the caller threatened to harm Allen's family if he did not plead guilty.

> THE COURT: Other than the terms of the plea agreement we have just briefly discussed, has anybody promised you anything or given you any other assurance of any kind in an effort to induce you to enter this plea of guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone attempted in any way to force you to plead guilty in this case?
>
> THE DEFENDANT: No, sir.

3

THE COURT: Are you pleading guilty voluntarily and of your own personal decision to do so?

THE DEFENDANT: Well, can I say something, Your Honor?

THE COURT: Yes, sir.

THE DEFENDANT: My and my dad's name are the same. And I was — I was kind of — somebody called my dad and threatened if I didn't plead into it, you know, or that they were going to harm my family. And they called his number thinking that was me, because I'm a junior and it's not listed in the phone book as a junior. So, but I understand, yes, sir.

THE COURT: Well, are you pleading guilty because somebody made a threat on your life, or your father's, or your family's, or are you pleading guilty because you are, in fact, guilty?

. . .

THE DEFENDANT: It was today when they called.

THE COURT: No. That's not my question.
Are you pleading guilty because you are, in fact, guilty?

THE DEFENDANT: No, sir. I'm guilty. I'm guilty, sir, you — but, you know, I'm guilty, yes, sir.

When asked to state a factual basis for his plea, Allen stated that he participated in the drug transaction because he worked as a confidential informant for the Etowah County Drug Task Force. Allen stated that he had worked for the task force for years and that he was trying to gain the confidence of drug dealers and infiltrate a drug organization to "work off" criminal charges incurred by his son.

4

THE DEFENDANT: I was working — I sold narcotics — I worked for Etowah County for seven years. I have worked for Etowah County as a C.I.

THE COURT: C.I.?

THE DEFENDANT: Yes, sir. And to the point — to the point I have listed things I have done for them that I was under the influence of whatever I had to do to get to the Avilas is what I was asked to do.

And I got — I was also in a process, these other guys here with me, I have cases on them that I — I was actually trying to work something off for my son. My son was in some trouble. And I got involved in it and was trying to help him in on it.

And when the physical evidence come back against my son, I couldn't — they said it wouldn't count. So all this that I have done for — for my son, the trafficking cases with these guys here that are listed on this, they don't count.

So I was still trying to get to the Avilas through Andres and the other Mexican trying to bring down an organization that Etowah County's been trying to get for the past 10 or 15 years, I guess, maybe longer. And I got caught up in it too much and — and was trying to do whatever I had to do, do whatever I had to do to get involved in it. And I got caught selling also.

THE COURT: Well —

THE DEFENDANT: Without — without the — their authorization, but was under the influence that I was told specially to do what I had to do, we went to Avilas.

THE COURT: So did you think you were working for the drug task force, or were you doing it for your own profit?

THE DEFENDANT: There was no profit involved, sir. I was trying to further more — my influence of getting involved with them, you know. They come to my shop, like a few days before that, five of them did, with Andres. Come to my shop. And Steve Guthrie knows about that the — of Etowah — Steve Guthrie and [sic] narcotic agent that I have been working for, for the past five years and brought down

5

big cases for them all over Georgia, Alabama, you know.  I was in the other states, too, doing work for them.

But he knew about them coming to the shop, meeting with me. And this was exact words, the organization  . . . . They were in Roebuck, these guys were.  And they were in an organization.

The district court interrupted Allen and asked the prosecutor why Allen was being charged for distributing methamphetamine.  The prosecutor acknowledged that Allen had served extensively as an informant before the drug transaction, but the prosecutor argued that Allen did not conduct the transaction on behalf of the government.  Allen's attorney interjected that the government had video and audio recordings of the transaction.

THE COURT: Why are we here, Ms. Hodge?

. . .

MS. HODGE: It's the Government's position — we agree in part with what Mr. Allen says.

There was a period of time where he was working with the Etowah County Drug Task Force Unit extensively in the past for credit for things on state-related cases, things related to his son, things of that nature.  He was, in fact, working to help make some of the deals that are part of this indictment.  And then he fell off the wagon, so to speak.

There was a period of time in between . . . . And the last buy that we have in which he was involved working for law enforcement was April 6th of 2011.

So it's the Government's position there was a period of approximately four months when he was not in contact with law enforcement where he was not working at their behest.  He was not conducting otherwise illegal activity under the authority of law enforcement, which is how we were able to make this buy from him on August the 19th.  That was not part of any authorized activity that he was supposed to be doing as a confidential informant.

6

THE COURT: So you sent a C.I., a C.I. informant in to make a buy on this date from Mr. Hernandez and Mr. Allen?

MS. HODGE: Yes, Your Honor.  And that was based on information that they were hearing — that law enforcement was hearing about Mr. Allen going off on his own ventures.

MR. BROOME: I might also add, there is a video and audio of that C.I. buying from Mr. Allen on August the 19th.

The district court questioned Allen about his conduct.  Allen acknowledged that he was not instructed by the task force to sell the methamphetamine, but he insisted that he made the sale on behalf of the task force.

THE COURT: Mr. Allen, did you hear and understand what Ms. Laura Hodge the assisting supervisor said?

THE DEFENDANT: Yes, sir.

THE COURT: Is she correct?

THE DEFENDANT: Yes, sir, she is.  But I was under the influence — you know —

The district court refused to accept Allen's change of plea to guilty.  Allen and his attorney appeared prepared to proceed to trial, but the prosecutor requested a recess for Allen to confer with his attorney.

THE COURT: — I tell you what.  I think we better try this case.  And let Mr. Allen explain himself to the jury.  And if they believe that he thought he was still under the influence of the Government, even though the Government sent a confidential informant in, then he can be found not guilty, but I am not going to take this plea.  I wouldn't touch it with a ten foot pole.

7

MR. BROOME [Defense counsel]: Yes, Your Honor.

THE COURT: So you just get ready for trial, Mr. Allen.  And that way you won't have to worry about any personal —

THE DEFENDANT: Your Honor, I would, just speaking what I feel, you know, I'm sorry. . . . You know, but I — you know, I do other work.  I've actually got . . . other things, too, you know.

THE COURT: Okay.

MS. HODGE: Your Honor, if I may.
    Could we have a few moments outside the presence of the Court to give Mr. Broome an opportunity to talk to his client and then to ask any questions of us that he might have in an effort to clarify this matter and resolve it today?

THE COURT: I will give you some time.

When the hearing resumed, defense counsel announced that Allen wanted to

plead guilty.  The district court continued to express its reservations about

accepting Allen's plea of guilty in the light of his protestations of innocence.

MR. BROOME: Judge, we would like to go forward with our change of plea, Your Honor.

THE COURT: Well, I'm concerned about doing that, Mr. Broome.
    As I understand what your client is saying, is that he . . . was under the mental impression that he was doing what the Government wanted him to do when he sold 5 grams or more of methamphetamine to a confidential informant on the 19th day of August of 2011 in Etowah County.

MR. BROOME: Judge, I don't think that's what the facts show, and I don't really think that's what Mr. Allen meant to tell the Court.

THE COURT: He stated it pretty clearly, as far as I heard.

8

MR. BROOME: Your Honor, he wouldn't have been — Judge, he can probably tell the Court must better than I can.

Allen acknowledged that the information included in the factual basis was accurate.  Allen admitted that his truck was used to obtain the methamphetamine because "[t]hey always used my vehicle"; he knew the confidential informant, Sam Greenwood, because Greenwood had sold Allen illegal drugs in the past; and he instructed Greenwood to retrieve from the floor a towel containing the methamphetamine.  But, when questioned by the district court, Allen maintained that he was acting for the task force.

> THE COURT: Well, when you were doing all these things, did you think you were working on behalf of the Government, or was it for your own profit?
>
> MR. BROOME: You have got to tell the truth.  That's all I can tell you.
>
> THE DEFENDANT: I felt like I was, but I guess I wasn't, sir.  I felt like I was, though, in my heart.

The district court questioned Allen about the threatening telephone call. Allen's father stated that the caller said "they [would] get rid" of Allen.  Based on Allen's hesitation to admit his guilt and the threatening phone call, the district court refused to enter a plea of guilty.

> THE COURT: And do you know who called your father's house today and threatened him?
>
> THE DEFENDANT: No, sir.  Other than being part of that organization.

9

THE COURT: And what exactly did they say?

THE DEFENDANT: What exactly did they say, daddy?

MR. DAVID ALLEN, SR.: Said they was going to get rid of him.

THE COURT: Well, I'm not prepared to take this plea.  And if there's a threat against Mr. Allen's life, best protection that we can give him is to try his case.  That way nobody will think that he is acting as a snitch, as an informant.

. . .

MR. BROOME: Judge, I respect Your Honor's opinion on that, but it would come out during a trial that he was actually working — it would be more information than the public, as far as him working for the Etowah County Drug Task Force, if he went to trial.  He would testify to that.  I would ask the agents information about that.

THE COURT: Well, if you want to waive venue, we could try it some place other than Gadsden and Etowah County.

MR. BROOME: Then that is a —

THE COURT: That's up to you . . . .

. . .

MR. BROOME: Thank you, Your Honor.

At trial, the government presented testimony and audio recordings establishing that Allen sold methamphetamine and marijuana to Greenwood, who was another informant for the county task force.  Michael Martin, an agent of the Federal Bureau of Investigation, testified that Allen had worked as a confidential informant when making controlled purchases of methamphetamine between

10

January and April 2011; Allen purchased the drugs from Hernandez, who the Bureau believed had connections to a drug trafficking organization run by the Avila family; and Allen always was equipped with a recording device and gave the drugs that he purchased to his supervising agents. After Martin learned that Allen had been selling drugs and had sold methamphetamine to Greenwood, Martin arranged for Greenwood to make a controlled purchase from Allen.

Martin and Greenwood testified about the drug transaction between Greenwood and Allen on August 19, 2011, and Greenwood identified the audio recording of the sale. Martin testified that, while Greenwood was waiting inside Allen's shop for Hernandez to return with the methamphetamine, Martin visited the shop to talk to Allen, but Allen did not mention that he was selling drugs to Greenwood. Greenwood admitted that he used methamphetamine and testified about his drug transaction with Allen; stated that Allen had demanded payment for methamphetamine he had given Greenwood one day earlier; and recalled a conversation in which Allen boasted that he was going to perform tile work in a federal agent's house and "smoke some stuff in [the] bathroom." At the conclusion of Greenwood's testimony, Allen moved for a judgment of acquittal on the ground that there was insufficient evidence to prove that he had conspired with Hernandez to distribute methamphetamine, but the district court denied Allen's motion.

11

Allen testified that he was acting on behalf of the task force when he sold methamphetamine to Greenwood. Allen testified that he began working for the Etowah County Drug Task Force in 2008 in exchange for the dismissal of a drug charge and later he made controlled buys for compensation because "it made [him] feel like one of [the officers]." Allen testified that he ceased working as an informant in 2009, but he resumed the work about a year later to "work off charges against his son." Allen acknowledged that his supervising agent, Agent Steve Guthrie, had told him to wait before transacting with Greenwood, but Allen sold methamphetamine to Greenwood because Guthrie said to "do whatever you have got to do" to "bring down the organization"; Allen wanted to continue cultivating his relationship with Hernandez, whom Allen believed had connections to the Avila organization; and Allen needed to dispel suspicions expressed recently by Hernandez and others that Allen was working for the government. Allen acknowledged that he did not contact Guthrie about the transaction with Greenwood, but Allen said that he hinted that he was "working on something right now" to Agent Martin when he visited Allen's shop.

Guthrie testified that Allen had worked regularly as an informant for the task force; he was an "enthusiastic" informant; and he liked to "brag [that] his initials were DEA." Guthrie testified that all government informants were instructed not to buy or sell drugs unless at the direction of the task force, but Allen had

12

purchased drugs without permission on a couple of occasions and been allowed to continue working as an informant.  Guthrie also testified that Allen had been warned to "quit [making purchases without permission] . . . because [the task force] can't make prosecutable cases [that] way."  On cross-examination, Guthrie stated that he was introduced to Greenwood by Agent Martin; he never gave Allen permission to make uncontrolled drug purchases; he never instructed Allen to "do whatever it takes"; and Allen had bought, but never sold drugs as an informant.

The government called Agent Martin to rebut Allen's testimony.  Martin denied that Allen mentioned having "something going on right now" or that he gestured to Greenwood to suggest that Allen was conducting a drug transaction for the government.  Martin testified that Allen did not report to the task force that he had sold methamphetamine to Greenwood, nor did Allen confess immediately when he was questioned by agents.  Allen renewed his motion for a judgment of acquittal on the charge of conspiracy, but the district court denied the motion.

The jury found Allen guilty of conspiring to distribute and of distributing methamphetamine.  The jury found that Allen was responsible for more than five grams, but less than 50 grams of methamphetamine that the conspiracy distributed.

Allen's presentence investigation report provided a base offense level of 28, based on the 22.2 grams of methamphetamine that he sold to Greenwood.  See United States Sentencing Guidelines Manual § 2D1.1(c)(6) (Nov. 2012).  The

report increased the offense level by two points because Allen had perjured himself at trial by falsely "testif[ying] that he was working as a [CI] when the August [19], 2011, drug transaction took place." See id. § 3C1.1.  With a criminal history of I and a total offense level of 30, Allen's presentence report provided a sentencing range between 97 and 121 months of imprisonment.

Allen objected to the two-point enhancement of his sentence for obstruction of justice on the ground that he did not give "willful and intentional perjured testimony at trial," and he also sought a reduction of two points under the "safety valve," see U.S.S.G. § 2D1.1(b)(16); 18 U.S.C § 3553(f).  The government responded that Allen perjured himself by testifying that he was working as an informant on August 19, 2011.  The government also argued that Allen failed to qualify for the safety valve because he "maintained through the course of the trial . . . that he was working under the direction of the Government when he sold methamphetamine . . . ."

The district court overruled Allen's objections to the presentence investigation report.  The district court credited the testimony from Martin and Guthrie that "Allen had never been instructed to sell methamphetamine to anyone at any time" and that "[h]is sole function as a confidential informant was to purchase controlled substances usually while wearing the wire or video equipment and providing information" against Hernandez and another coconspirator.  Based

on its findings that the agents' testimonies were "credible and truthful" and that "Allen lied," the district court determined that an enhancement for obstruction was "a correct attribution for [Allen's] false testimony during trial" and for "the denials that he made in [the] Rule 11 plea colloquy." The district court ruled that Allen's false statements "also deprive[d] him of the benefit of the . . . safety valve under Guideline Section 5C1.2(a)(5), and . . . its . . . statutory corollary Title 18, U.S. Code, Section 3553(f)(5)." The district court adopted the factual findings and calculations in the presentence report, sentenced Allen to two terms of 97 months of imprisonment, and ordered that the terms run concurrently.

## II. STANDARDS OF REVIEW

We apply three standards of review. We review the refusal of the district court to enter a plea of guilty for abuse of discretion. See United States v. Gomez-Gomez, 822 F.2d 1008, 1010 (11th Cir. 1987). We review de novo the denial of a motion for acquittal based on the sufficiency of the evidence and interpret all inferences and credibility choices in favor of the jury's verdicts. United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014). We review for clear error the enhancement of a sentence for obstruction of justice and the denial of relief under the safety valve, United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002) (obstruction); United States v. Johnson, 375 F.3d 1300, 1301 (11th Cir. 2004)

15

(safety valve), and we "accord great deference to the district court's credibility determinations," Singh, 291 F.3d at 763.

### III. DISCUSSION

Allen argues for vacatur of his convictions and his sentence on three grounds. First, Allen argues that the district court erred in refusing to accept his plea of guilty to distributing methamphetamine "on [an] erroneous legal conclusion that there is a 'good faith' defense to the offense of distribution of a controlled substance." Second, Allen argues that there is insufficient evidence to support his conviction for conspiracy to distribute methamphetamine. Third, Allen argues that the district court clearly erred by finding that he gave false testimony and by enhancing his sentence for obstruction of justice without specifying that the false testimony was material. Allen's arguments fail. We address each in turn.

*A. The District Court Did Not Abuse Its Discretion by Refusing to Accept Allen's Tendered Plea of Guilty.*

"[W]e give the utmost deference to the decision of the trial judge in rejecting guilty pleas." Gomez-Gomez, 822 F.2d at 1011. A defendant has no absolute right to have a plea of guilty accepted by the district court, id. at 1010, and "[w]hen a defendant attempts to couple a guilty plea with an assertion of facts that would negate his guilt, a judge may properly treat this assertion as a protestation of innocence" and "is not required to . . . enter judgment upon a guilty plea under these circumstances," id. at 1011. "[W]hen a defendant casts doubts upon the

16

validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against the plea." Id.

The district court did not abuse its discretion when it refused to accept Allen's plea of guilty. During the change of plea hearing, Allen stated that someone had threatened to harm him if he did not plead guilty. See Fed. R. Crim. P. 11(b)(2) (requiring the district court to determine that the defendant is entering a plea of guilty voluntary and not due to coercion or promises). And Allen asserted repeatedly that he sold the methamphetamine on behalf of the county drug task force. See id. 11(b)(1)(B) (requiring the district court to ensure that the defendant understands that he has the right to "persist" in a plea of not guilty). Allen insisted that he conducted the drug transaction to maintain the confidence of a drug seller whom he believed he could use to infiltrate a large-scale drug organization. Even after Allen consulted with his attorney, who acknowledged that the evidence was sufficient to substantiate a plea of guilty, and Allen admitted the elements of the distribution offense, he maintained that he was innocent. Allen likens his situation to United States v. Martinez, 486 F.2d 15 (5th Cir. 1973), where the district court erred by refusing to accept a plea of guilty on the ground that Martinez's statement to authorities was arguably coerced and rendered his tendered plea involuntary. Id. at 21. But, unlike Martinez, who "freely admitted his guilt," id., Allen contended that he was innocent because he distributed methamphetamine in cooperation with

17

the task force and in the belief that he had been instructed to do "whatever [he] had to do to get to the Avilas." Allen argues that the district court erred by reasoning that he had a viable "innocent intent" or "public authority" defense, but Allen asserted that his actions were the result of a mistake of fact that would not be consistent with criminal intent. See United States v. Tobin, 676 F.3d 1264, 1280 (11th Cir. 2012) ("[T]he term 'knowingly' means that 'the act was performed voluntarily and intentionally, and not because of a mistake or accident.'" (quoting United States v. Woodruff, 296 F.3d 1041, 1047 (11th Cir. 2002)); see also United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994). Regardless of the validity of his defense, Allen's continued protestation of his innocence casted doubt on the voluntariness of his decision to plead guilty. The district court had the discretion to resolve such doubt against accepting Allen's plea of guilty. See Gomez-Gomez, 822 F.2d at 1011.

### B. Sufficient Evidence Supports Allen's Conviction for Conspiring to Distribute Methamphetamine.

The district court did not err by denying Allen's motion for a judgment of acquittal on the charge of conspiring to distribute methamphetamine. To convict Allen, the government had to prove that Allen agreed with Hernandez to distribute methamphetamine; Allen knew the purpose of the agreement; and Allen knowingly and voluntarily participated in the agreement. See 21 U.S.C. § 846. Allen did not dispute that on August 19, 2011, he sold methamphetamine to Greenwood; the task

18

force had instructed him only to purchase, not to sell, methamphetamine; and he continued to consort with Hernandez after the drug task force ceased making controlled purchases from him. And the jury reasonably could have found that Allen conspired with Hernandez to sell drugs based on the evidence that Hernandez was waiting at Allen's shop for Greenwood to arrive; Allen counted Greenwood's $1,600 payment in Hernandez's presence and handed him that money; Hernandez used Allen's vehicle to transport the methamphetamine; Allen also sold marijuana to Greenwood; and Allen later demanded payment from Greenwood for the marijuana. See United States v. Gianni, 678 F.2d 956, 959 (11th Cir. 1982) ("There is rarely any direct evidence of an agreement to join a criminal conspiracy, so that a defendant's assent can be inferred from acts furthering the conspiracy's purpose."). Sufficient evidence supports Allen's conviction for conspiracy.

Allen argues that the evidence was insufficient to prove that he had a "personal stake" in the drug transaction or that he joined in the objective of the conspiracy, but we disagree. Allen argues that he participated only in "an isolated instance of distribution," see United States v. Hardy, 895 F.2d 1331, 1335 (11th Cir. 1990), but the jury reasonably could have found that Allen had an ongoing agreement with Hernandez based on their past transactions and their coordinated efforts to sell methamphetamine and marijuana to Greenwood. Allen also argues

19

that he was "work[ing] to impede his alleged co-conspirators' efforts to distribute" drugs, but the jury rejected Allen's testimony and credited the testimonies of Agents Martin and Guthrie that Allen was selling drugs "on the side," see United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) ("It is well established that credibility determinations are the exclusive province of the jury." (internal quotation marks and alteration omitted)).  We will not disturb the credibility determinations of the jury, particularly when Allen does not challenge the agents' testimonies as incredible as a matter of law.  See id.

### C. The District Court Did Not Clearly Err by Enhancing Allen's Sentence for Obstruction of Justice or by Denying Him Relief Under the Safety Valve.

A defendant is subject to a two-level increase in his offense level if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ."  U.S.S.G. § 3C1.1.  One way in which a defendant obstructs justice is when he "commit[s], suborn[s], or attempt[s] to suborn perjury."  Id. § 3C1.1 cmt. n.4.  Perjury occurs when a defendant offers "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993).  Where the basis for the obstruction of justice enhancement is perjury, "a general finding that an enhancement is warranted suffices if it

20

encompasses all of the factual predicates for a perjury finding." Singh, 291 F.3d at 763 (quoting United States v. Lewis, 115 F.3d 1531, 1538 (11th Cir. 1997)).

The district court did not clearly err when it enhanced Allen's sentence for obstruction of justice. Allen objected to the enhancement on the ground that he did not give "willful and intentional perjured testimony at trial," but the district court was entitled to make a contrary finding. The district court found that Allen's testimony about acting on behalf of the task force was irreconcilable with the testimony from Agents Martin and Guthrie that Allen never had been instructed to sell drugs and that he had not followed the routine procedures for engaging a controlled transaction on behalf of the task force. See United States v. Williams, 627 F.3d 839, 845 (11th Cir. 2010) (concluding that a defendant's testimony which is irreconcilable with evidence credited by the jury constitutes obstruction of justice). Allen's testimony warranted an enhancement for obstruction of justice.

Allen argues that the district court failed to identify the material facts about which he testified falsely, but this argument fails. We can readily discern from the statements of the district court at sentencing that it found Allen obstructed justice by testifying falsely that he distributed methamphetamine in cooperation with the drug task force. Because Allen's perjurious statements were woven throughout his testimony, more "detailed findings [by the district court] were not necessary and would have been redundant." See United States v. Smith, 231 F.3d 800, 820 (11th

21

Cir. 2000).  Moreover, the district court was not obliged to make further findings when it adopted the statement in Allen's presentence investigation report that he "perjured himself . . . at trial" when "[h]e testified that he was working as a confidential informant when the . . . drug transaction took place, when in fact, he was not," and when Allen did not ask the district court to specify what statements were material.  Allen "failed to request more detailed findings of perjury at sentencing, [and] it is too late now to complain in this court."  United States v. Gregg, 179 F.3d 1312, 1317 (11th Cir. 1999) (internal quotation marks, citation, and alteration omitted); see, e.g., United States v. Wayerski, 624 F.3d 1342, 1352 (11th Cir. 2010); Smith, 231 F.3d at 820.

We will not disturb the decision of the district court to deny Allen relief under the safety valve.  Allen requests an "opportunity to seek the safety valve adjustment" if we conclude that the district court clearly erred by finding that Allen's testimony was false.  Because we affirm the enhancement for obstruction of justice based on perjury, we need not consider Allen's request for the application of the safety valve.

## IV. CONCLUSION

We **AFFIRM** Allen's convictions and sentence.