[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12098
Non-Argument Calendar

_____

D.C. Docket No. 0:12-cr-60143-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALCI BONANNEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 17, 2014)

Before CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Alci Bonannee appeals her convictions for one count of conspiracy to

defraud the United States government, nine counts of making false claims to the

Internal Revenue Service, 14 counts of wire fraud, and nine counts of aggravated identity theft. She also challenges her total sentence of 317 months imprisonment. Bonannee raises three issues on appeal. She contends that: (1) the district court abused its discretion by refusing to accept her guilty plea; (2) the accumulation of errors at trial deprived her of a fair trial; and (3) her sentence is procedurally and substantively unreasonable.

I.

We review a district court's decision to reject a guilty plea for abuse of discretion. United States v. Gomez-Gomez, 822 F.2d 1008, 1010 (11th Cir. 1987).

"A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere." Fed. R. Crim. P. 11(a)(1). Before accepting a guilty plea, the district court "must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). A defendant does not have an "absolute right to have a guilty plea accepted," and "[a] court may reject a plea in exercise of sound judicial discretion." United States v. Santobello, 404 U.S. 257, 262, 92 S.Ct. 495, 498 (1971). "[U]nless the [court's] refusal is without justification and the court is thereby shown to have abused its discretion, the ruling will not be disturbed on appeal." United States v. Crosby, 739 F.2d 1542, 1544 (11th Cir. 1984). "It is far better for a court to err on the side of rejecting a valid

guilty plea than to violate a defendant's constitutional rights by entering judgment on a defective plea." Gomez-Gomez, 822 F.2d at 1011.

At Bonannee's initial appearance before the district court, six months before her trial, she entered a plea of not guilty. In the months leading up to the trial, she continued to insist on going to trial. The night before the trial began, however, the government informed her that Betty Cole, a nurse at South Miami Hospital who had sold her the names, dates of birth, and Social Security numbers of patients at the hospital, would testify as a government witness. When the trial began the next day, Bonannee said for the first time that she wanted to plead guilty, as her codefendants, Sonyini Clay and Chante Mozley, had done. Of the 33 counts with which she was charged, she indicated that she would plead guilty to three of them. Before completing the plea colloquy, she changed her mind and told the district court that she "want[ed] to proceed with the trial." The trial proceeded and that day the government presented testimony from two IRS investigators showing that Bonannee and her codefendants had filed more than 2,000 fraudulent tax returns.

At the start of the second day of trial, Bonannee again announced that she wanted to plead guilty. The district court tried to conduct another plea colloquy, but Bonannee's behavior raised concerns about whether her plea was voluntary. When asked whether she wanted to give up her right to a trial, she said "no." The district court responded, "If that is not what you want to do, we need to proceed

3

with this trial." Bonannee asked for a minute to think about her plea and talk to her family, which the court granted. During the pause, the district court reminded her that the court is "required under our Rules of Criminal Procedure to make a finding that your plea is knowing and voluntary, and if I sense any equivocation at all, I can't accept your plea. . . . I can't help but, at this point, sense there is [] equivocation here."

Bonannee's attorney chimed in to say that he had explained to her that pleading guilty was in her best interest. But unpersuaded, the district court said: "I can't accept her plea at this point. It is obvious to the Court that she is not sure this is what she wants to do." Turning to Bonannee, the court said: "ma'am, as I told you on several occasions, you have a constitutional right to a trial by jury, and I am here to accord you that right." She responded: "Judge, I feel it is in my best interest." The district court asked if she had any reservations about entering a guilty plea, and she said, "Yes, I do have reservations, but I was told it is in my best interest for me to go ahead." The district court pressed and asked Bonannee whether she really felt that pleading guilty was in her best interest, and she replied, "I can't honestly say yes, but, yes." The court said it was having "grave difficulty" finding her plea to be voluntary. Defense counsel chimed in once more to ask Bonannee if she was pleading guilty voluntarily, to which she responded "yes," but

4

the district court said that even if "[s]he is uttering the word yes . . . the expression on her face belies that determination."

After a brief recess, the district court said that "based upon the colloquy conducted by the Court, I find there is a great reluctance on the part of [Bonannee] to enter a guilty plea, and, accordingly, it is impossible for me to make a finding that the plea is voluntary. Accordingly, I can't accept it." At that point Bonannee told the court yet again that she wanted to plead guilty. And the court gave her another chance to do so. But as before, she was unable to complete the colloquy. That time, when the district court asked if she agreed with the factual basis offered by the government for her plea, she hesitated before saying she agreed. And when the court asked her how she pleaded to the wire fraud count, she hesitated again, never giving an answer. Breaking the silence, the court said: "The record will reflect there is a long pause and I cannot — as much as I want to find that the plea is freely and voluntarily given, it is apparent to this Court that it is not free and voluntary. I am sorry, but under these circumstances — I have never found a plea to be involuntary, but this one, that is the only conclusion I can make under these circumstances." The trial then continued.

Later that same day, Bonannee again raised the prospect of pleading guilty. Through defense counsel, she passed a note to the court which read: "You know what, I'll plea[d] and I want to speak to [the government] now." But after

5

Bonannee's earlier failed attempts to plead guilty, the court expressed serious concerns and said that it didn't "feel comfortable proceeding with the plea in light of the history of this case." Defense counsel raised the issue of a guilty plea once more that afternoon. Counsel asserted that if given one more chance Bonannee could satisfy the court that her plea is voluntary. But doubtful that the outcome would be any different, the court said: "My problem is simple. I have no confidence that tomorrow or the next day or the following day she is not going to come in and move to withdraw that guilty plea . . . . And that is based on the history of this case." After further discussion with defense counsel, the court concluded that: "Under these circumstances, I am just not going to accept the plea. I am sorry."

Bonannee asserts that the district court abused its discretion by not allowing her to plead guilty. We disagree. Before accepting a guilty plea, a district court is required to ensure that it is voluntary. See Fed. R. Crim. P. 11(b)(2). And the district court had ample reason to conclude that Bonannee's guilty plea was not voluntary. As the dialogue between Bonannee and the court shows, she was undeniably reluctant to go through with the plea, repeatedly failing to complete the plea colloquy. It was that "history" that led the district court to conclude that any plea Bonannee offered would not be voluntary. That conclusion was justified. We will not disturb it on appeal. See Crosby, 739 F.2d at 1544 ("[U]nless the [court's]

6

refusal is without justification and the court is thereby shown to have abused its discretion, the [refusal to accept a guilty plea] will not be disturbed on appeal."). The district court did not abuse its discretion by rejecting Bonannee's guilty plea.[1]

## II.

Bonannee asserts that a series of errors, when considered cumulatively, deprived her of a fair trial. First, the district court did not adequately cure one witness' statement which, according to Bonannee, violated her Fifth Amendment right to silence.[2] Second, the district court did not adequately cure another witness' statement which, according to Bonannee, constituted improper opinion evidence.[3] Third, the government made improper remarks during its closing arguments.[4]

---

[1] Bonannee asserts that the district court's decision to reject her guilty plea also violates North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970). That assertion lacks merit. In Alford, the Supreme Court held that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. at 37, 91 S.Ct. at 167. But "[e]ven an Alford plea requires that the defendant's legal admission of guilt be entered voluntarily, knowingly, and understandingly." United States v. Brown, 117 F.3d 471, 478 n.5 (11th Cir. 1997) (quotation marks omitted). Bonannee's plea was not voluntary. Alford is off point.

[2] This first statement was made by Special Agent Aileen Martinez, a criminal investigator with the IRS. When defense counsel asked her on cross-examination where the money from the tax fraud had gone, she responded by saying: "You are going to have to ask your client [where the money went], I apologize." To cure any prejudice caused by that statement, the district court told the jury: "Folks, let me, once again, remind you that [Bonannee] is not required to prove anything. She is presumed innocent and the burden of proof is on the Government."

[3] This second statement was made by Robin Nicorvo, one of Bank of America's senior investigators. Nicorvo said that surveillance videos of Bonannee and codefendant Mozley making withdrawals from the bank showed that Bonannee was the "dominant force" in the

The cumulative error doctrine provides that an aggregation of non-reversible errors can result in denial of the constitutional right to a fair trial. United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation marks omitted). In deciding whether a defendant was denied her constitutional right to a fair trial, "[we] look to see whether the defendant's substantial rights were affected" by the total effect of the errors. Id. (quotation marks omitted). "Errors . . . affect a substantial right of a party if they have a substantial influence on the outcome of a case or leave grave doubt as to whether they affected the outcome of a case." Id. (quotation marks omitted). "We determine whether an error had substantial

conspiracy. The district court sustained Bonannee's objection to that testimony on the ground that it was improper opinion testimony. The court asked Nicorvo to instead describe what she personally observed in the surveillance video. She responded: "Right, Bonannee would come in as the dominant force, [Mozley] to the side. It would be like a show, clip board and purse, drama, hair flip and look like I am busy, busy, busy. I am an important person, you should pay attention to me. That was my observation." Bonannee again objected. To cure any prejudice caused by Nicorvo's testimony, the court said: "I think part of the response did contain opinion testimony. So, with respect to any opinions rendered, that is, testimony other than what the witness actually observed with respect to the actions of the parties, [the jury is] hereby instructed to disregard those opinions."

[4] During its initial closing argument, the government said it was "aggravating" and "insulting" that even patients at South Miami Hospital, which was the source of many of Bonannee's victims, were not safe from identity theft. The government talked generally about the impact that identify theft has on its victims. And it said that tax and identity fraud "strikes [at] the heart of our system, our financial system. Not IRS money, not just Government money, it is our money. . . . When you steal from the IRS, you are stealing from all of us." Bonannee did not object to any of those remarks. During its rebuttal closing argument, the government added that defense counsel, in his own closing argument, had not tried to explain why Bonannee had the personal information for patients at South Miami Hospital. The government said that while citizens should be helping their country, Bonannee was stealing from it. And it said that Bonannee's many victims deserved justice. As before, Bonannee did not object to any of those remarks.

8

influence on the outcome by weighing the record as a whole, examining the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." Id. (quotation marks omitted).

Here, the evidence of Bonannee's guilt was insurmountable. Even if we assume that the alleged errors were actually errors, they had no effect on the outcome of her trial. Over the course of the trial, the government showed that, from 2010 to 2012, Bonannee conspired with codefendants Mozley and Clay, and others, to file more than 2,000 false federal income tax returns claiming over $11 million in tax refunds. IRS investigators testified that the tax returns were filed without the knowledge or consent of the victims, many of whom were deceased, from Internet Protocol (IP) addresses that were linked to Bonannee and Clay.[5] Those same investigators testified that in response to those tax returns, the IRS paid out more than $4.4 million, nearly all of which was deposited into bank accounts controlled by Bonannee and her codefendants. Video surveillance and bank records showed that Bonannee personally withdrew more than $1.3 million

---

[5] "IP addresses identify computers on the Internet, enabling data packets transmitted from other computers to reach them." Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 987 n.1, 125 S.Ct. 2688, 2703 n.1 (2005). Like a physical address, an IP address can be used to determine where a particular computer is located. In this case, nearly 500 of the fraudulent 2011 tax returns were filed from a computer using an IP address associated with Bonannee's home. Fifty or sixty more of the fraudulent 2011 tax returns were filed from a computer using an IP address associated with a hotel room rented to Bonannee.

from those accounts before they were frozen by the banks due to fraud concerns.

Corporate filings showed that Bonannee set up the two corporate entities used to

lend an appearance of legitimacy to the fraudulent tax filings.  The government

offered testimony showing that Bonannee bought lists with the names, dates of

birth, and Social Security numbers of more than 1,000 patients at South Miami

Hospital.  Those lists were found in her home when the government searched it.

Many of those patients were victims of Bonannee's fraud and testified for the

government at trial.

When weighed against that evidence, the errors alleged by Bonannee had no

impact on the outcome of the trial and thus did not affect her substantial rights.

See Baker, 432 F.3d at 1223.  At sentencing, even defense counsel admitted as

much:  "I don't think anybody had any doubt after hearing the evidence, I know I

didn't have any, that there is only one verdict that could be reached.  The evidence

was overwhelming."  Bonannee was not deprived of a fair trial.

### III.

Bonannee asserts that her guidelines sentence of 317 months imprisonment

is procedurally and substantively unreasonable.  We review a sentence's

procedural and substantive reasonableness under a deferential abuse-of-discretion

standard.  Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007).

In reviewing the procedural reasonableness of a sentence, we ensure that the district court properly calculated the guidelines range, treated the United States Sentencing Guidelines as advisory, considered the 18 U.S.C. § 3553(a) factors,[6] did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence. Id. at 51, 128 S.Ct. at 597. The fact that a district court does not explicitly address or analyze a § 3553(a) factor does not necessarily mean that the court failed to consider it. See United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). It is sufficient if a district court states that it considered the parties' arguments and the § 3553(a) factors. See United States v. Irey, 612 F.3d 1160, 1195 (11th Cir. 2010) (en banc).

Bonannee asserts that the district court failed to consider mitigating factors like (1) her personal history and characteristics, (2) her claim that she did not financially benefit from her crime, and (3) her last-minute desire to assist the government. We disagree. The district court stated that it considered the § 3553(a) factors, the statements of the parties, and the presentence investigation report. The court adequately explained the reasons for the sentence imposed, and

---

[6] The district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2), including the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. Id. § 3553(a)(1), (3)–(7).

Bonannee has failed to show that her sentence was procedurally unreasonable.  See id.; Scott, 426 F.3d at 1329.

As for substantive unreasonableness, we will find a sentence substantively unreasonable only if we are left with the definite and firm conviction that the district court committed a clear error in judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.  Irey, 612 F.3d at 1190.  The party challenging the sentence bears the burden of showing that it is unreasonable in light of the record and the factors in § 3553(a).  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

The only ground Bonannee asserts to support her contention that her guidelines sentence is substantively unreasonable is that her codefendants, Mozley and Clay, received more lenient sentences.  We disagree.  Mozley and Clay pleaded guilty; Bonannee did not.  Mozley also cooperated with the government during its investigation, which prompted the government to ask the district court to reduce her sentence.  Bonannee did not cooperate with the government.  She is not similarly situated to Mozley and Clay.  See United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) ("[D]efendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial.  There is no

12

unwarranted disparity even when the sentence the cooperating defendant receives is substantially shorter.") (citation and quotation marks omitted).  Also unlike Mozley and Clay, Bonannee was the organizer and leader of the conspiracy, a role for which she received a four-level role enhancement.  Her argument that her sentence is substantively unreasonable fails.

**AFFIRMED.**